*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0171p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

ROXIE HOLLON, on behalf of JOSEPH W. HOLLON,
  *Plaintiff-Appellant,*

  *v.*

COMMISSIONER OF SOCIAL SECURITY,
  *Defendant-Appellee.*

No. 04-6163

>

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 03-00037—Jennifer B. Coffman, District Judge.

Argued: July 29, 2005

Decided and Filed: May 22, 2006

Before: ROGERS and SUTTON, Circuit Judges; ROSEN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Wolodymyr Cybriwsky, LAW OFFICES OF WOLODYMYR CYBRIWSKY, Prestonsburg, Kentucky, for Appellant. Laurie G. Remter, SOCIAL SECURITY ADMINISTRATION, Atlanta, Georgia, for Appellee. **ON BRIEF:** Wolodymyr Cybriwsky, LAW OFFICES OF WOLODYMYR CYBRIWSKY, Prestonsburg, Kentucky, for Appellant. Laurie G. Remter, Mary Ann Sloan, Dennis R. Williams, Nadine DeLuca Elder, Richard V. Blake, SOCIAL SECURITY ADMINISTRATION, Atlanta, Georgia, for Appellee.

---

## OPINION

---

ROSEN, District Judge. In this appeal, Plaintiff/Appellant Roxie Hollon ("Hollon") challenges the district court's decision affirming the determination of the Defendant/Appellee Commissioner of Social Security (the "Commissioner") to terminate the payment of child's Supplemental Security Income ("SSI") benefits to Hollon's son, Joseph W. Hollon ("Joseph"). Specifically, Hollon advances three contentions on appeal: (i) that the district court erred in declining to compel the Commissioner to consider new evidence of Joseph's medical condition in the course of a remand to reconstruct a lost administrative record; (ii) that the Commissioner's

---

[*]The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

decision to terminate benefits was impermissibly based in part upon an invalid, less-than-knowing waiver of the right to a hearing that Hollon signed before she obtained the assistance of counsel; and (iii) that the Commissioner's underlying benefit determination was not supported by substantial evidence. Finding no error, we affirm.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Joseph W. Hollon was born on December 3, 1989. In April of 1990, Joseph's mother, Roxie Hollon, applied on his behalf for child's Supplemental Security Income benefits, citing asthma as his impairment. On March 29, 1991, the Social Security Administration determined that Joseph's asthma was disabling, and awarded child's SSI benefits for the period beginning April 1, 1990.

### A.      The Termination of Joseph's SSI Benefits and the Ensuing Administrative Proceedings

On April 16, 1999, the Social Security Administration notified Hollon that Joseph's SSI benefits would cease in June of 1999, based on the agency's determination that her son was no longer disabled. Hollon sought reconsideration of this decision, but the agency notified her on May 1, 2000 that it was adhering to its determination that Joseph was no longer eligible for SSI benefits. Hollon was further advised of her right to seek review of this decision by an Administrative Law Judge ("ALJ").

Hollon promptly requested an ALJ's review in a Social Security Administration form submitted on May 3, 2000. This form included two check boxes, inviting Hollon to choose between "appear[ing] at a hearing" or allowing the ALJ to decide the matter "based on the evidence." (Request for Hearing Form HA-501, Admin. Record at 52.) It appears that Hollon initially checked the box reflecting her desire for a hearing, but that she blackened this out and instead checked the box indicating that she did not wish to attend a hearing. (*See id.*)[1]

In the course of reviewing the record, ALJ John M. Lawrence noted Hollon's apparent election not to appear at a hearing, and sought to ensure that this accurately reflected Hollon's wishes. Thus, the ALJ wrote to Hollon on March 6, 2001, stating:

> In reviewing you[r] file, I noted that you waived your right to appear and give evidence, and you requested that a decision be made based on the evidence of record. After reviewing the evidence in your case, I feel that it may be to your benefit to appear and testify at a hearing.
>
> If you should decide to appear at a hearing, you will be notified in advance of the time and place. Please mark below your choice, sign on the signature line of this letter, and return this letter to me as soon as possible.

(ALJ's 3/6/2001 Letter, Admin. Record at 277.) Immediately below this text, Hollon was invited to express her preference regarding a hearing, and she responded by placing a check mark next to the line stating, "I do not wish to appear and testify at a hearing and request that a decision be made based on the evidence of record." (*Id.*) She then signed and returned the letter to the ALJ, accompanied by a signed Form HA-4608 in which she confirmed the waiver of her right to appear before the ALJ. (*See* Form HA-4608, Admin. Record at 278.)

---

[1]Although this form instructed Hollon to "[c]omplete Waiver Form HA-4608" to confirm her desire not to appear at a hearing, (*id.*), Hollon evidently did not execute any such waiver form at the time. Rather, as discussed below, she completed the waiver form several months later, in response to an inquiry by the ALJ.

In a decision dated April 13, 2001, the ALJ found that Joseph's SSI benefits had been properly terminated in June of 1999, two months after he ceased to be disabled within the meaning of the Social Security Act. The ALJ determined that Joseph suffered from the medically determinable impairment of asthma, but concluded that the severity of this condition had diminished since Joseph was found to be disabled in March of 1991. The ALJ further determined that Joseph's impairment, while severe, did not meet or medically or functionally equal the requirements of any listing in the Listing of Impairments set forth at 20 C.F.R. pt. 404, subpt. P, app. 1. Finally, the ALJ found that Joseph's impairment did not result in marked or severe functional limitations.[2]

On April 23, 2001, Hollon requested that the Appeals Council review the ALJ's decision. Hollon was represented by counsel in this phase of the administrative proceedings, and her attorney submitted additional medical records from the Kentucky River Medical Center and a family physician. In a decision dated November 20, 2002, the Appeals Council denied Hollon's request for review. The Appeals Council explained that the medical records provided by Hollon's attorney had been considered and "made a part of the record," but that neither the contentions of counsel nor the additional evidence "provide[d] a basis for changing the Administrative Law Judge's decision." (Appeals Council's 11/20/2002 Decision, Admin. Record at 5-7.)

## B.     The District Court Proceedings and the Reconstruction of the Administrative Record

Hollon commenced this action in the U.S. District Court for the Eastern District of Kentucky on January 29, 2003, challenging the decision of the Commissioner of Social Security to terminate her son's SSI benefits. Shortly thereafter, and before any answer was filed, the Commissioner moved for a so-called "sentence six" remand under 42 U.S.C. § 405(g), citing the agency's inability to locate the record of the administrative proceedings regarding the cessation of Joseph's benefits. Through this motion, the Commissioner requested an opportunity to search for the file, and to reconstruct the record if it could not be located within a reasonable period of time. Hollon responded that she had no objection to such a remand but, to the contrary, was already assisting the Commissioner in reconstructing the lost file. Accordingly, the district court entered an April 15, 2003 order granting the Commissioner's motion and remanding the case for further administrative proceedings.

Over the next several months, Hollon and her present counsel[3] evidently sent two sets of records to the Appeals Council as part of the effort to reconstruct the administrative record. Initially, in March of 2003, Hollon and her counsel forwarded 350 pages of materials obtained from the attorney who had assisted Hollon in her administrative appeal. Then, on September 2, 2003, Hollon and her counsel submitted an additional 612 pages of documents to the Appeals Council, purportedly evidencing "eighty-eight (88) Emergency Room treatments or Hospitalizations" Joseph underwent at the Kentucky River Medical Center "during the relevant time period." (Plaintiff/Appellant's Br. at 7.)[4]

---

[2] Although no hearing was held and no testimony was taken, the ALJ nonetheless found that Hollon's unsworn statements in the record "regarding the continuing severity of [Joseph's] symptoms and the extent of his limitations [we]re not fully credible." (ALJ's 4/13/2001 Decision at 7, Admin. Record at 19.) As discussed below, Hollon contends that this assessment of her credibility was inappropriate, in view of the purported absence of a meaningful waiver of her right to appear at a hearing.

[3] Upon commencing her federal suit, Hollon retained new counsel who continues to represent her on appeal.

[4] These materials have not been made a part of the record on appeal, and we thus are forced to rely upon Hollon's characterization of them. As noted earlier, however, the attorney who represented Hollon in her administrative appeal provided records of Joseph's treatments at the Kentucky River Medical Center over the period from March 3, 1999 to April 22, 2001, (*see* 7/12/2001 Letter from Counsel, Admin. Record at 300), and the Appeals Council made these materials a part of the administrative record, (*see* Appeals Council's 11/20/2002 Order, Admin. Record at 7; *see also*

On October 28, 2003, the Commissioner submitted a 301-page administrative record to the district court,[5] and the case was restored to the court's active docket. In Hollon's view, however, this administrative record was incomplete in two respects. First, it purportedly failed to include all of the 350 pages of documents that Hollon and her counsel initially forwarded to the Appeals Council upon learning that the administrative record had been lost.[6] Next, the record provided by the Commissioner did not include the most recent 612 pages of medical records that Hollon and her counsel mailed to the Appeals Council on September 2, 2003.

In light of these perceived deficiencies, Hollon requested that the district court again remand the case to the Commissioner, so that the balance of her 350-page submission and the entirety of her 612-page submission could be incorporated into the administrative record. The district court denied this motion, finding that Hollon had failed to demonstrate the good cause and materiality that are the prerequisites to such a remand. The district court then proceeded to the merits of the case, determining in a June 14, 2004 order that the Commissioner's decision to terminate Joseph's SSI benefits was supported by substantial evidence in the administrative record. Hollon now appeals, advancing both procedural and substantive challenges to the district court's rulings.

## II. *ANALYSIS*

### A.   The District Court Did Not Err in Declining to Order a Remand for Consideration of Additional Evidence of Joseph's Medical Condition.

As is clear from the foregoing, the parties devoted a significant portion of their efforts in the court below to the threshold matter of ascertaining the proper content of the administrative record, as opposed to the substantive inquiry whether this record provided substantial support for the Commissioner's decision to terminate Joseph's SSI benefits. Likewise, Hollon's arguments on appeal rest principally upon the premise that the administrative record is incomplete, defeating any possibility of meaningful judicial review and fatally undermining the administrative decision that rests upon this record. In light of this purported defect, Hollon contends that the district court erred in declining to remand this case with instructions that the Commissioner incorporate into the record all of the materials that Hollon submitted to the Appeals Council during the process of reconstructing the lost record. We find, however, that the district court properly applied the correct standards in ruling that Hollon was not entitled to a remand for further development of the administrative record.

A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g), which provides in pertinent part:

---

Admin. Record at 279-85, 290-94 (underlying medical records)). In addition, the administrative record includes other records of Joseph's treatments at the Kentucky River Medical Center, spanning from May of 1990 to March of 1999. (*See* Admin. Record at 126-33, 162-249.) Accordingly, the record already includes considerable evidence of Joseph's treatments at this facility throughout the entire relevant time period. It is not clear whether, and to what extent, the 612 pages of documents produced by Hollon and her present counsel in September of 2003 are duplicative of these existing portions of the administrative record.

[5]Although the record is not entirely clear on this point, it appears that the Commissioner was unable to locate the lost administrative record, and that the record instead had to be reconstructed.

[6]While Hollon repeatedly asserts in her briefs on appeal that the 301-page administrative record omits some of the 350 pages produced by her counsel in March of 2003, she fails to identify the specific portions of this 350-page submission that were left out of the administrative record. Even if we were inclined to investigate this matter anew, we could not do so, because Hollon has not incorporated her 350-page submission into the record on appeal. We further note that Hollon has not suggested any basis upon which we could conclude that the omitted portions of this 350-page submission originally were a part of the lost administrative record.

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action . . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing . . . . The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).

As we have elsewhere observed, two separate sentences within this provision authorize remands to the Commissioner. *See Faucher v. Secretary of HHS*, 17 F.3d 171, 174 (6th Cir. 1994). First, a district court may order a "sentence four" remand after reviewing the Commissioner's decision and entering a judgment, if it determines that a rehearing before the Commissioner is warranted in light of the court's ruling. *See id.* Alternatively, the district court may order a prejudgment "sentence six" remand, which provides a potential avenue for the relief sought by Hollon in this case: namely, the reopening of the administrative record so that the Commissioner may consider "new and material evidence that for good cause was not previously presented to" the Commissioner. *Id.*[7]

Yet, the statute is quite explicit as to the standards that must be met before a district court may order a sentence six remand for the taking of additional evidence. In particular, it must be shown (i) that the evidence at issue is both "new" and "material," and (ii) that there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996). The party seeking a remand bears the burden of showing that these two requirements are met. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

In this case, Hollon has not established — and, indeed, has scarcely even addressed — these two prerequisites to a sentence six remand for the consideration of new evidence. First, she has not shown that her proposed additions to the record are either "new" or "material." As to the former, we have explained that "evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (internal quotation marks and citation omitted). Such evidence, in turn, is deemed "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357 (internal quotation marks and citation omitted).

---

[7]As we recently noted, sentence six of § 405(g) actually authorizes two different sorts of prejudgment remands. *See Marshall v. Commissioner of Social Security*, No. 05-5492, __ F.3d __, 2006 WL 997213, at *3 n.2 (6th Cir. Apr. 18, 2006). We return to this distinction below.

Neither of the two sets of documents that Hollon seeks to add to the record satisfies these criteria for "new" and "material" evidence. Initially, Hollon protests that the 301-page record that the Commissioner forwarded to the district court does not incorporate the entirety of her 350-page submission to the Appeals Council upon learning that her son's claim file had been lost. Yet, these 350 pages of documents clearly were in existence and available to Hollon during the administrative proceedings, as Hollon herself asserts that all of these materials were "previously submitted to the Commissioner" by the attorney who represented her in her administrative appeal. (Plaintiff/Appellant's Br. at 6.) It follows that there is no "new" evidence amongst this 350-page submission. Moreover, as we noted earlier, Hollon has not advised us which portions of this 350-page collection of documents have been omitted from the 301-page administrative record, much less endeavored to explain how their inclusion might have led to a different outcome in the administrative proceedings. We are unwilling to assume, absent any basis for doing so, that Hollon's 350-page submission invariably must be more supportive of Joseph's entitlement to benefits than the 301-page record before us.[8]

The other collection of documents that Hollon seeks to introduce into the administrative record is the 612 pages of medical records of Joseph's treatments at the Kentucky River Medical Center that Hollon and her current counsel sent to the Appeals Council while this case was on remand from the district court. Once again, however, Hollon has not even attempted to show that these materials were unavailable to her or her prior counsel during the course of the administrative proceedings. Neither has she explained how these materials add anything to the existing (and considerable) record of Joseph's visits to and treatments at this same facility over an eleven-year period. For all that can be discerned from the record before us, Hollon's 612-page submission might be entirely cumulative of materials that already are a part of the administrative record. If this were not the case, it presumably would not be difficult for Hollon to identify *some* material distinction between the existing record and her voluminous submission. Tellingly, she has not done so.

Hollon's showing is similarly deficient on the "good cause" prong of a request for a sentence six remand. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. Again, there is no indication that any of the evidence cited by Hollon as grounds for a remand was unavailable to her during the course of the administrative proceedings. Nor has she identified any obstacles to her submission of this evidence during those proceedings. Even assuming that Hollon's *pro se* status is relevant to the "good cause" inquiry, *see, e.g., Jones v. Sullivan*, 949

---

[8]We reiterate that there is no indication that the 301-page record produced to the district court is a less-than-complete reconstruction of the lost administrative record, or that Hollon's 350-page submission more accurately reflects this lost record. Because Hollon has not specifically identified any evidence in the original record that failed to find its way into the reconstructed record, our ruling here does not create a paradox in which claimants are precluded from adding original record evidence to a reconstructed record simply because the evidence is not "new."

If Hollon had established otherwise, and had persuaded the district court (or this court) that specific, identifiable original evidence was indeed omitted from the reconstructed record, we are confident that a statutory remedy would have been available to rectify this omission. Section 405(g) requires that "[a]s part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." Presumably, then, if a court concludes that a reconstructed record is not the full and complete record upon which the agency based its decision, it may reverse this decision in light of the Commissioner's failure to provide the materials necessary for the court to satisfy its statutory obligation — namely, to inquire whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *see also* 5 U.S.C. § 706 (dictating that "the court shall review the whole record" in reviewing a challenged agency decision). Upon reversing a decision that the agency rendered unreviewable, the court could then order a remand under the authority of sentence four, so that the agency could include the omitted evidence in the reconstructed record. *Cf. Russell v. Commissioner of Social Security*, No. 00-6675, 2002 WL 509309, at *2 (6th Cir. Apr. 1, 2002) (per curium) (remanding under sentence four when the reconstructed record failed to include specific, original evidence, and thus left the courts to review only part of the record relied upon by the ALJ).

F.2d 57, 61 (2d Cir. 1991), she was represented by counsel by the time the matter reached the Appeals Council — and, indeed, her attorney was successful in supplementing the administrative record at that point. Accordingly, we agree with the district court's conclusion that Hollon has not met the standards for a sentence six remand for the consideration of new evidence.

Nonetheless, Hollon argues that she should be relieved of the obligation to satisfy these statutory requirements of materiality and good cause, where the district court **already** had ordered a remand under sentence six of § 405(g) to allow the Commissioner to either locate or reconstruct the lost administrative record. As Hollon observes, nothing in the district court's order of remand precluded the Commissioner from receiving her additional evidence — and, indeed, the pertinent agency regulations seemingly confirm the Commissioner's authority to proceed in this fashion upon remand from the district court, *see* 20 C.F.R. § 404.983. Because the case was remanded at the Commissioner's request, and because it was the Commissioner's negligence that necessitated this remand, Hollon contends that it would only be fair to allow her to supplement the administrative record while the Commissioner was in the process of rebuilding it.

Hollon's argument on this point, however, is at odds with both the express language of § 405(g) and the practical realities of a sentence six remand for the consideration of new evidence. As discussed earlier, the statute specifically enumerates the requirements for a remand of the sort sought by Hollon: a court may order such a remand "**only** upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added). The fact that **another** party — the Commissioner — has met the prerequisites for a **different** sort of remand — under the first portion of sentence six — does not overcome the statutory command of both "good cause" and "new and material evidence" as required grounds for a sentence six remand for the consideration of additional evidence.

As the Supreme Court has made clear, we are not free to dispense with these statutory requirements. In *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S. Ct. 2157 (1991), the Court considered a case in which the district court had ordered a remand for further administrative proceedings without specifying the basis for this remand. The parties and the Court alike agreed that this order was not predicated on sentence four of § 405(g), "as the District Court did not affirm, modify, or reverse the Secretary's decision." *Melkonyan*, 501 U.S. at 98, 111 S. Ct. at 2163. Yet, the Court also found itself unable to "state with certainty that the remand in this case was . . . a sentence six remand," where the district court had not made the requisite finding of "good cause" for such a remand. 501 U.S. at 102, 111 S. Ct. at 2165.

Faced with this interpretative dilemma, the Court addressed the argument that a district court "has inherent authority to enter other types of remand orders," beyond those permitted under sentences four and six of § 405(g). 501 U.S. at 99, 111 S. Ct. at 2164. The Court found that this proposition could not be squared with the language of the statute itself:

> . . . [I]n [a prior case] we analyzed § 405(g) sentence by sentence and identified two kinds of possible remands under the statute. While we did not state explicitly at that time that these were the *only* kinds of remands permitted under the statute, we do so today. Under sentence four, a district court may remand in conjunction with a judgment affirming, modifying, or reversing the Secretary's decision. Under sentence six, the district court may remand in light of additional evidence without making any substantive ruling as to the correctness of the Secretary's decision, but only if the claimant shows good cause for failing to present the evidence earlier. Congress' explicit delineation in § 405(g) regarding the circumstances under which remands are authorized leads us to conclude that it intended to limit the district court's authority to enter remand orders to these two types.

501 U.S. at 99-100, 111 S. Ct. at 2164 (footnote and citation omitted).[9] As further support for this reading, the Court cited passages from the legislative history of § 405(g) evidencing a belief that "courts were often remanding Social Security cases without good reason." 501 U.S. at 101, 111 S. Ct. at 2165. Accordingly, the Court held that "in § 405(g) actions, remand orders must either accompany a final judgment affirming, modifying, or reversing the administrative decision in accordance with sentence four, or conform with the requirements outlined by Congress in sentence six." 501 U.S. at 101-02, 111 S. Ct. at 2165. Because the district court's order in that case did not fit within either of these categories, the Supreme Court remanded for clarification of the grounds for the remand.

We confront no similar interpretative dilemma here. Rather, all are agreed that the district court ordered a remand under the first portion of sentence six, finding that the Commissioner had shown "good cause" for a remand through a motion brought before an answer had been filed. *See* 42 U.S.C. § 405(g).[10] Just as clearly, the district court's order *did not* reflect the findings necessary to support a remand under the latter portion of sentence six. To the contrary, the district court subsequently held, and we have now affirmed, that Hollon failed to satisfy the two statutory prerequisites to a remand for consideration of additional evidence. If the district court had nonetheless ordered such a remand, it would have exceeded its limited authority under § 405(g) as construed in *Melkonyan*.

It readily follows, in our view, that the Commissioner was under no obligation to consider any additional evidence upon remand from the district court. As reflected in the Commissioner's motion, this remand was for the limited purpose of finding or reconstructing the lost administrative record. Regardless of whether the Commissioner's regulations might *permit* the taking of additional evidence in the course of this effort, *see* 20 C.F.R. § 404.983, Hollon has not identified any legal basis for *compelling* the Commissioner to do so. To the contrary, § 405(g) explicitly states the criteria that must be satisfied before a court may order the Commissioner to consider additional evidence. Hollon simply has not met these requirements, and neither this court nor the district court is at liberty to dispense with them. Accordingly, the district court properly concluded that there was no basis upon which to order a sentence six remand for the taking of additional evidence.

Even if we believed ourselves free to disregard the statutory criteria for a sentence six remand under some sufficiently compelling set of circumstances, Hollon's generalized appeal to notions of fairness would not motivate us to do so in this case. Hollon contends, in essence, that it would be inequitable to grant a remand based on the Commissioner's negligence, yet deny an innocent claimant the opportunity to use this same remand to supplement the record. Given that the Commissioner had already embarked upon the process of rebuilding the record, Hollon maintains that nothing would be lost, and perhaps something would be gained, if she were permitted to provide additional materials that would shed further light on her son Joseph's medical condition and treatments over the years.

We cannot agree with Hollon's premise that her proposed supplementation of the record would be entirely cost-free. It does no good, after all, to merely add more materials to the

---

[9] In a footnote omitted from the above-quoted passage, the Court recognized that "[s]entence six also authorizes the district court to remand on motion by the Secretary made before the Secretary has filed a response in the action," but observed that "[this] subcategory of sentence six remands is not implicated in this case." 501 U.S. at 100 n.2, 111 S. Ct. at 2164 n.2. Here, of course, the district court ordered precisely this sort of remand, as opposed to the other subcategory of sentence six remand sought by Hollon.

[10] Hollon did not oppose the Commissioner's motion. Nor does she dispute that the Commissioner established "good cause" by pointing to the loss of Joseph's claim file — a recordkeeping mishap which, if not remedied, would have defeated any prospect of meaningful judicial review.

administrative record, unless there will be further administrative proceedings in which the Commissioner decides whether to revisit a denial of benefits ***in light of*** this new evidence. Absent such additional administrative review, a court could not properly perform its task under § 405(g) of determining whether the Commissioner's decision is supported by substantial evidence, because the court would be evaluating a record beyond that which was before the Commissioner at the time of the challenged decision. This procedure would violate our oft-stated rule that judicial review is "confined to [the] evidence that was available to the [Commissioner]." *Wyatt v. Secretary of HHS*, 974 F.2d 680, 685 (6th Cir. 1992).

Consequently, there is no reason for a court to permit a Social Security claimant to supplement the administrative record on remand unless the court ***also*** is prepared to order the Commissioner to ***act upon*** this new evidence. Yet, a court cannot issue such an order — and, moreover, it would serve no useful purpose — unless there is some basis for believing that the Commissioner might reach a different decision in light of this new evidence. This is precisely the function of the "materiality" prong of the statutory standard for a sentence six remand — as explained, it directs the court to inquire whether "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357 (internal quotation marks and citation omitted). Where, as here, a claimant's proffered evidence does not meet this standard, nothing would be gained by adding it to the administrative record, whether through a sentence six remand or some other procedural device.

We readily acknowledge Hollon's concern that the Commissioner's loss of the administrative record injects a troublesome element of uncertainty into the proceedings, and unduly shifts the focus from ordinary "substantial evidence" review to litigation over the proper content of the reconstructed record. Indeed, at oral argument, we expressed our dismay, frustration and concern that administrative records are lost in far too many cases, reflecting the Social Security Administration's apparent inattention to its important recordkeeping responsibilities. In addition, we sought assurances that the Commissioner is working actively and aggressively to prevent such mishaps in the future, and to ensure that claim files are maintained in accordance with the agency's statutory obligations. If the Commissioner is unable to improve the agency's performance in this regard, Congress perhaps might wish to mitigate the potential prejudice to claimants by relaxing the statutory standards for remands in some cases,[11] or by adopting other remedial measures. In the present case, however, we are unwilling to order as a remedy that the administrative record be reopened to any and all submissions, absent any ground for believing that this additional evidence would result in a materially different record. Because no such showing has been made in this case, we affirm the district court's denial of Hollon's request for a sentence six remand for consideration of new evidence.

**B.      The District Court Did Not Err in Holding that Hollon Validly Waived Her Right to Appear at a Hearing Before the ALJ.**

As her next issue on appeal, Hollon argues that the district court erred in determining that she validly waived her right to appear at a hearing before the ALJ. We find, however, that Hollon's waiver of this right comported with the pertinent standards promulgated by the Commissioner and reflected in our precedents.

As we have explained, both the Social Security Act and basic principles of due process "require that a claimant receive meaningful notice and an opportunity to be heard before his claim

---

[11]Congress could, for example, relieve a claimant of the burden of establishing the "good cause" prong of the sentence six standard in cases where the Commissioner seeks a remand to reconstruct a lost administrative record.

for disability benefits can be denied." *Stoner v. Secretary of HHS*, 837 F.2d 759, 760-61 (6th Cir. 1988) (citing 42 U.S.C. § 405(b)). Similarly, the Commissioner's regulations confirm that "[a]ny party to a hearing has a right to appear before the administrative law judge . . . to present evidence and to state his or her position." 20 C.F.R. § 416.1450(a). This same regulation further provides, however, that a party may waive his or her right to appear by "send[ing] the administrative law judge a waiver or a written statement indicating that [he or she] do[es] not wish to appear at the hearing." 20 C.F.R. § 416.1450(b); *see also Stoner*, 837 F.2d at 761 (noting that "the right to appear can be waived").

Beyond these general provisions, the Commissioner has issued a ruling that sets standards for testing the validity of a waiver:

> In order to insure that any waiver is made voluntarily and knowingly, the [Commissioner] has promulgated Social Security Ruling (SSR) 79-19 to "establish requirements necessary for a valid waiver of an individual's right to appear, in person or through a representative, and present evidence or information at a hearing before the Office of Hearings and Appeals." Prior to the publication of SSR 79-19, the only requirement for a valid waiver was that it be in writing. For administrative convenience, SSA Form HA 501, "Request for Hearing," included a check-box where the claimant could indicate his decision. Although the form still is in use, in order to waive the right to appear, SSR 79-19 suggests that the claimant "sign a statement to that effect in accordance with the evidence requirements described below." In the statement, a claimant acknowledges that he has been informed of the nature of the proceedings and of his right to counsel, to appear and testify at the hearing, to present evidence, to waive the right to appear, and to have the waiver withdrawn prior to the mailing of the decision.

*Stoner*, 837 F.2d at 761.

In this case, Hollon initially submitted a "Request for Hearing" Form HA-501 in May of 2000, and she checked the box on this form indicating that she did not wish to appear at a hearing. (Request for Hearing Form HA-501, Admin. Record at 52.) Immediately adjacent to this check-box, however, Hollon was advised to "[c]omplete Waiver Form HA-4608," (*id.*), and it is undisputed that Hollon did not execute this additional waiver form at the time. Without more, Hollon's "mere marking of the check-box on the request for hearing form" might have been ambiguous, and might not have qualified as a valid waiver of her right to appear before the ALJ. *See Stoner*, 837 F.2d at 761.

But this was not the end of the matter. Rather, as recounted above, the ALJ wrote to Hollon on March 6, 2001, noting her apparent waiver of her right to appear at a hearing, and cautioning that "[a]fter reviewing the evidence in your case, I feel that it may be to your benefit to appear and testify at a hearing." (ALJ's 3/6/2001 Letter, Admin. Record at 277.) Accordingly, the ALJ requested that Hollon again indicate whether she wished to appear at a hearing. (*See id.*) In response, Hollon signed and returned this letter to the ALJ a few days later, after first placing a check mark next to the line stating, "I do not wish to appear and testify at a hearing and request that a decision be made based on the evidence of record." (*Id.*)

Just as importantly, Hollon *also* signed and returned a separate waiver on Form HA-4608. (*See* Form HA-4608, Admin. Record at 278.) Through this form, signed the same day as her response to the ALJ, Hollon acknowledged: (i) that she had been advised of her right to appear before the ALJ; (ii) that, although this right had been explained to her, she did not wish to appear; (iii) that she was free to change her mind and request an appearance before the ALJ at any time before the ALJ mailed his decision; and (iv) that she had a right to be represented in the

administrative proceedings.  (*See id.*)  So far as revealed in the record, Hollon did not attempt to revoke this waiver, request an opportunity to appear, or otherwise indicate that she had changed her mind at any time before the ALJ issued his decision, and she does not maintain otherwise on appeal.

Under these circumstances, we find no basis for questioning the validity of Hollon's waiver. The Form HA-4608 that she signed in March of 2001 precisely tracks each of the requirements for a valid waiver as established in Social Security Ruling 79-19.  *See Stoner*, 837 F.2d at 761. Although Hollon did not execute this form in May of 2000 when she first expressed her desire not to appear at a hearing, the form was timely completed and returned well before the ALJ proceeded on April 13, 2001 to decide Joseph's claim without a hearing.  Indeed, the ALJ seemingly went beyond the requirements of SSR 79-19 by writing directly to Hollon and expressly advising her that "it may be to your benefit to appear and testify at a hearing."  (ALJ's 3/6/2001 Letter, Admin. Record at 277.)  Despite this urging, Hollon confirmed her election not to appear, signing *two* additional statements to this effect.  Under this record, we are at a loss to discern any additional measures that the ALJ might have employed to confirm Hollon's knowing waiver of her right to appear at a hearing.

Nor can we accept Hollon's suggestion that her failure to appear at a hearing should somehow have precluded the ALJ from discounting the "credibility" of her unsworn statements in the administrative record.  Whether characterized in terms of credibility, weight, or persuasiveness, each item of evidence in the record must be evaluated by the ALJ in his fact-finding role to determine its bearing upon a claimant's entitlement to benefits.  In finding that certain of Hollon's statements were "not fully credible," (ALJ's 4/13/2001 Decision at 7, Admin. Record at 19), the ALJ was engaged in nothing more than the usual fact-finder's function of determining the extent to which a claimant's own reports of his or her symptoms and limitations are consistent with or contradicted by the remainder of the record.

When she signed Form HA-4608 confirming her waiver of the right to appear before the ALJ, Hollon expressly acknowledged that her "personal appearance before an Administrative Law Judge would provide [her] with the opportunity to present . . . [her] testimony," and that "this opportunity to be seen and heard could be helpful to the Administrative Law Judge in making a decision."  (Form HA-4608, Admin. Record at 278.)  Similarly, the ALJ specifically advised Hollon in his March 6, 2001 letter that her appearance at a hearing "may be to your benefit."  (ALJ's 3/6/2001 Letter, Admin. Record at 277.)  Having nonetheless decided to waive her right to appear, Hollon cannot now complain that a foreseeable consequence of this election came to pass — namely, that the ALJ might give less than full weight to her statements regarding her son's symptoms and limitations.  Accordingly, we affirm the ruling in the court below that Hollon validly waived her right to appear before the ALJ.

**C.      The District Court Properly Found that the Commissioner's Decision Is Supported by Substantial Evidence in the Record.**

Hollon's final contention on appeal is that the Commissioner's decision to discontinue Joseph's benefits is not supported by substantial evidence in the administrative record.  This challenge warrants little discussion, as Hollon has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record.  Under these circumstances, we decline to formulate arguments on Hollon's behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence.  Rather, we limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.

Hollon's substantive challenge to the Commissioner's decision, while vague and difficult to discern, seemingly rests upon two propositions. First, she harkens back to her principal contention on appeal, arguing that the Commissioner's decision is fatally undermined by the lack of a complete record of Joseph's medical condition and treatments over the years. Yet, we already have concluded that there was no basis for a remand for consideration of new evidence, where Hollon has not shown that any such additional evidence might have materially affected the outcome of the administrative proceedings. It follows that any purported gaps in the administrative record do not threaten to deprive the Commissioner's decision of substantial evidentiary support.

Next, Hollon suggests that the ALJ failed to give proper deference to the opinions of Joseph's treating physicians. As the Commissioner points out in response, however, Hollon has failed to cite any specific opinion that the ALJ purportedly disregarded or discounted, much less suggest how such an opinion might be impermissibly inconsistent with the ALJ's findings.[12] In the absence of any such focused challenge, we decline to broadly scrutinize any and all treating physician opinions in the record to ensure that they are properly accounted for in the ALJ's decision.

More generally, to the extent that the records of Joseph's treating physicians confirm that he continues to suffer from asthma, the ALJ recognized the existence of this severe impairment, (*see* ALJ's 4/13/2001 Decision at 6, 7, Admin. Record at 18, 19), but found that this condition was no longer disabling within the meaning of the Social Security Act. Hollon has not endeavored to explain how proper deference to the opinions of Joseph's treating physicians would require a different conclusion. Accordingly, we concur in the district court's ruling that the Commissioner's decision is supported by substantial evidence.

### III. *CONCLUSION*

For the reasons set forth above, we AFFIRM the challenged district court rulings in all respects.

---

[12]Notably, the district court cited precisely the same deficiency in Hollon's argument in the proceedings below. (*See* District Court 6/14/2004 Order at 8.)