NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0439n.06

Case No. 14-6243

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Jun 11, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JUANITA COX, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | OPINION |

BEFORE: GRIFFIN and DONALD, Circuit Judges; TARNOW, District Judge.[*]

**ARTHUR J. TARNOW, Senior District Judge.** A Social Security Administration Administrative Law Judge (ALJ) denied Appellant's application for disability benefits. Despite finding that Appellant suffers from severe impairments, including bilateral carpal tunnel syndrome, the ALJ concluded that Appellant is capable of performing her past work as a sewing machine operator. The district court affirmed the ALJ's conclusion. We **REVERSE** the judgment of the district court and **REMAND** with instructions to remand to the Commissioner for reevaluation of medical source opinions and Appellant's credibility.

---

[*]The Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

## BACKGROUND

Appellant filed an application for disability benefits on June 22, 2010, alleging disability beginning January 3, 2007. The ALJ adjudicated Appellant's claim and held a hearing on January 13, 2012. Appellant was represented by counsel. On September 7, 2012, the ALJ issued a decision finding Appellant not disabled and denying her application. Appellant requested review of the ALJ's decision by the Appeals Council and submitted additional evidence from her treating physician, Dr. Cortez Tucker. The Appeals Council denied Appellant's request for review on May 15, 2013. The Appeals Council stated that it had considered the additional evidence but concluded that it did "not provide a basis for changing the [ALJ's] decision." Appellant then sought review in the United States District Court for the Western District of Tennessee. On August 20, 2014, the district court affirmed the ALJ's decision.

## STANDARD OF REVIEW

We review de novo a district court's decision regarding Social Security disability benefits. *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011). "However, that review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Id.* (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 534 (6th Cir. 2001) (internal quotation marks omitted). A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion. *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007). But "[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where

the conclusion of the ALJ may be justified based upon the record."
*Cole,* 661 F.3d at 937 (internal quotation marks omitted) (citations omitted).

## ANALYSIS

Appellant argues that the symptoms of her bilateral carpal tunnel syndrome limit the use of her hands, and that these manipulative limitations preclude her performance of past relevant work.[1] She argues that the ALJ's decision to the contrary is not supported by substantial evidence because the ALJ failed to properly evaluate medical opinion evidence and her credibility. Further, she challenges the failure of the ALJ and the Appeals Council to consider additional evidence from her treating physician Dr. Tucker, which she submitted to the Appeals Council after the ALJ issued her decision. Finally, she argues that the ALJ's disability finding, even if supported by substantial evidence, covers an improper period.

## I. The ALJ's Evaluation of the Record

Appellant argues that the ALJ's decision is not supported by substantial evidence because the ALJ improperly evaluated the evidence before her. First, Appellant argues that the ALJ failed to properly weigh opinion evidence from medical sources and explain the weight given. Second, Appellant argues that the ALJ likewise failed to properly weigh the credibility of Appellant's testimony regarding the limiting effects of her symptoms.

### A. Medical Opinions

Appellant challenges the weight assigned by the ALJ to the medical source opinions in the record before her, as well as her explanations for that weight. Appellant focuses particularly

---

[1] In her statement of facts, Appellant asserts that she is incapable of her past relevant work not only due to manipulative limitations, but also due to sitting limitations. Elsewhere in her brief, Appellant notes in passing that the ALJ only partially credited an opinion from a psychological examiner. Otherwise, however, Appellant presents no argument concerning her sitting or mental limitations. We consider any such argument forfeited.

on the ALJ's analysis of the evidence from her treating physician, Dr. Tucker. Regulations require that an ALJ always give good reasons in her decision for the weight given to opinions from a claimant's treating source. 20 C.F.R. § 404.1527(d)(2). The ALJ's discussion of treating source evidence "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). Failure to meet this requirement requires remand unless the failure is harmless error. *See id.* at 940. However, we will not deem the error harmless simply because substantial evidence supports the ALJ's weighing of treating source opinions. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004)). The error is not harmless where it obstructs meaningful review of the ALJ's decision. *Id.* at 409 (citing *Wilson*, 378 F.3d at 544); *see also Cole*, 661 F.3d at 940; *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013). Accordingly, we "do not hesitate to remand … when we encounter opinions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole*, 661 F.3d at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Here, the ALJ identified no medical sources by name when discussing the weight she assigned to their opinions. However, she cited exhibits containing opinions from Dr. Tucker, Dr. Ronald Bingham, and Dr. Remy Valdivia in the following passage:

> In accordance with [Social Security Ruling] 96-2p, the undersigned considered the administrative findings of fact made by the claimant's treating physicians (Exhibits B2F, B15F & B16F). The opinions are weighed as examining sources. Because these impairments are well-supported by medically acceptable clinical and laboratory diagnostic techniques, and are consistent with other substantial evidence great weight is given to the examining sources medical opinions, as to the claimant's impairments and the limitations and are constant with the

claimant's present residual physical functional capacity and they do not erode the occupational base.

In a separate paragraph, the ALJ explained that she gave great weight to the opinions of two state agency physicians regarding Appellant's mental impairments.

The passage concerning Drs. Tucker, Bingham, and Valdivia is puzzling on its face. In the first sentence, the ALJ identifies the sources as treating sources and cites a Social Security Ruling governing the evaluation of treating sources. The ALJ proceeds to reference the standards for granting a treating source's opinion controlling weight, finding the opinions "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence." However, the ALJ states that she gives the sources' opinions "great" weight rather than controlling weight. Further, she twice describes the sources as "examining" sources rather than treating sources. An examining source is not a treating source if he does not see the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." 20 C.F.R. § 404.1502.

Indeed, the ALJ's discussion is troubling, because it appears to grant equal weight to the opinions of Drs. Tucker, Bingham, and Valdivia, without accounting for differences in their treating relationships. The ALJ cited Exhibit B15F, which contains over a year's worth of monthly treatment notes from Dr. Tucker, alongside Exhibits B2F and B16F. The latter exhibits reveal that Dr. Valdivia prepared an electromyography (EMG) report on August 9, 2005, after Appellant was referred to him by Dr. Earl Stewart. Dr. Bingham prepared a second EMG report on May 9, 2008, upon referral from Dr. Michael Caifee. Dr. Bingham noted his plan to refer Appellant back to Dr. Caifee. Finally, Dr. Valdivia prepared a third EMG report on October 23, 2009, upon referral from Dr. Stewart. There is no indication that the doctors saw Appellant on

any other occasion. The records thus show that Dr. Tucker saw Appellant with much greater frequency and regularity than Drs. Bingham and Valdivia. It is unclear whether the ALJ recognized this difference and, if so, why she concluded that the opinions of all three doctors were entitled to equal weight. This ambiguity hinders meaningful review of the ALJ's decision. *See Blakley*, 581 F.3d at 409 (holding an ALJ's failure to adequately explain the weight given to treating sources' opinions not harmless because the ALJ's reasoning was not sufficiently specific to make clear that the ALJ "recognized and evaluated the treating relationships").

Even if the ALJ considered Drs. Bingham and Valdivia treating sources, and was right to do so, she did not sufficiently explain her reasons for the weight she gave their opinions. After discussing the findings concerning Appellant's hands and wrists in Dr. Bingham's 2008 EMG report and Dr. Valdivia's 2009 EMG report, the ALJ stated that she gave both doctors' opinions "great" weight in part because they were consistent with the other record evidence. However, the ALJ did not discuss the content of Dr. Tucker's treatment notes concerning Appellant's hands and wrists.[2] The ALJ also failed to discuss the findings of consultative examiner Dr. Goewey concerning Appellant's hands and wrists—in fact, the ALJ did not once acknowledge or cite Dr. Goewey's report. We have previously held that an ALJ erred by discounting a treating source's opinions as inconsistent with the record without discussing extensive treatment notes from another source regarding the same impairment, even though the unmentioned evidence did

---

[2] In treatment notes dated December 2, 2010, and January 12, 2011, Dr. Tucker recorded an "assessment" of chronic pain syndrome and identified several sub-assessments, including bilateral carpal tunnel syndrome. He identified hand pain, weakness, and numbness as symptoms. In the following two treatment notes, Dr. Tucker again recorded an assessment of chronic pain syndrome but, instead of enumerating sub-assessments, wrote "see prior assessment." These notes thus appear to incorporate by reference the previous assessment of hand-related symptoms. Dr. Tucker continued to record an assessment of chronic pain syndrome throughout the treatment notes before the ALJ, which extend through December 23, 2011. These later treatment notes do not explicitly refer the reader to Dr. Tucker's prior assessments or note hand-related symptoms.

not come from an "acceptable medical source." *Gayheart*, 710 F.3d at 378–79. It was likewise inappropriate for the ALJ here to credit opinions as consistent with the record without mentioning material portions of the record from acceptable sources, including a treating source.

In sum, the ALJ's decision does not make clear how she classified the medical sources, what weight she assigned to the opinions of treating sources, or why she assigned them that weight. We do not consider this ambiguity harmless error, even though substantial evidence may support the ALJ's evaluation of the medical source opinions, because we cannot meaningfully review the ALJ's actual reasoning. *See Blakley*, 581 F.3d at 409–10. We therefore remand to the Commissioner for reevaluation of the medical source opinions.

**B.    Credibility**

Appellant argues that the ALJ's explanation of her credibility finding was inadequate. In *Rogers v. Commissioner of Social Security*, we summarized the standards to be used by an ALJ in assessing the credibility of a claimant's statements regarding the intensity and limiting effects of her symptoms:

> Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints based on a consideration of the entire case record. The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized.

486 F.3d 234, 247 (6th Cir. 2007) (citing Soc. Sec. Rul. 96-7p, 1996 WL 374186) (internal quotation marks omitted). We recognized the procedural safeguard imposed by Social Security Ruling 96-7p:

> Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator

gave to the individual's statements and the reasons for that weight." In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.

*Id.* at 248.

Here, Appellant stated that symptoms of her hand and wrist conditions limit her activities. At the hearing, Appellant testified that she cannot sew because she cannot hold a needle long enough. She further testified that she cannot hold her grandchildren because she cannot maintain a grip; that she used to love being outside in the yard and cleaning, but she has not been able to do those things since her hand problems developed; and that she no longer cooks because she cannot hold pots or utensils. This testimony was consistent with previous statements made by Appellant in writing.[3] The vocational expert testified that if the ALJ fully credited Appellant's testimony, "she would be unable to return to past relevant work or other work." However, the vocational expert testified that if Appellant is limited only as the ALJ set forth in Appellant's residual functional capacity (RFC), then she is capable of performing her past relevant work as a sewing machine operator.

In her decision, the ALJ adopted the vocational expert's opinion that Appellant is capable of working as a sewing machine operator—an opinion premised on the assumption that Appellant's testimony was not credible. The ALJ's only explicit reference to Appellant's credibility consisted of the following single-sentence paragraph:

---

[3] For instance, in a function report (Exhibit B3E) dated July 6, 2010, Appellant wrote that pain in her hands hinders her ability to do house or yard work, and that she has not been able to lift and hold pots and pans for cooking since the development of her conditions. In a pain questionnaire (Exhibit B4E) also submitted July 6, 2010, Appellant wrote that she cannot cook and clean because she cannot lift anything heavy. In another function report (Exhibit B9E), dated December 7, 2010, Appellant wrote that her conditions have caused her to prepare meals only twice per week.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

As the Ninth Circuit has noted, "ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) (citing *Kamann v. Colvin,* 721 F.3d 945, 949–51 (8th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 645–47 (7th Cir. 2012)). Several other Circuit Courts have criticized ALJs' reliance on this boilerplate and its variants, finding the language unhelpful and suggestive of a backwards approach to assessing a claimant's credibility and her RFC. *See, e.g.*, *id.* at 1103 ("[C]redibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing.") (quoting *Shauger v. Astrue,* 675 F.3d 690, 696 (7th Cir. 2012)); *Mascio v. Comm'r of Soc. Sec.*, 780 F.3d 632, 639 (4th Cir. 2015) ("We agree with the Seventh Circuit that this boilerplate 'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'") (quoting *Bjornson,* 671 F.3d at 645). We likewise consider the boilerplate unhelpful and poorly worded. Our chief concern with the popularity of this template, however, is the risk that an ALJ will mistakenly believe it sufficient to *explain* a credibility finding, as opposed to merely introducing or summarizing one.

The ALJ in this case seems to have made this mistake. The ALJ did not articulate any reason for discrediting Appellant's testimony. As mentioned, the ALJ's only explicit reference to Appellant's credibility consisted of the boilerplate quoted above. The boilerplate explains the extent to which the ALJ discredited Appellant's testimony, but not her reasons for doing so. In defense of the ALJ's credibility analysis, the Commissioner cites *Forrest v. Commissioner of*

*Social Security*, in which we found "no merit in [a claimant's] suggestion that the ALJ made only a 'boilerplate' credibility finding in violation of Social Security [Ruling 96-7p]." 591 F. App'x 359, 366 (6th Cir. Nov. 17, 2014) (unpublished). In that case, however, we reasoned that the ALJ had provided a "thorough explanation elsewhere of his reasons for doubting [the claimant's] account." *Id.* Here, the ALJ did not articulate any explanation of her reasons. This was reversible error. *See Rogers*, 486 F.3d at 249–50; *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 865 (6th Cir. Jan. 7, 2011) (unpublished).

The Commissioner urges the Court to excuse the ALJ's failure to articulate an explanation for her credibility finding on the grounds that an *implicit* explanation can be inferred from the ALJ's discussion of the record. In her decision, the ALJ discussed Appellant's daily activities immediately before the credibility boilerplate and proceeded to discuss medical evidence immediately after. According to the Commissioner, the discussion as a whole makes clear that the ALJ discredited Appellant's testimony because it was inconsistent with the daily activities and medical evidence discussed.

The Ninth Circuit recently rejected the Commissioner's approach. In *Treichler*, an ALJ used the same boilerplate language used here without identifying "what parts of the claimant's testimony were not credible and why." 775 F.3d at 1102–03. The Ninth Circuit held that the ALJ had therefore failed to fulfill his duty under 42 U.S.C. § 405(b)(1) to provide "a discussion of the evidence" and "the reason or reasons" for determining the claimant not disabled. *Id.* at 1103. The court further concluded that this failure constituted reversible error because it rendered the Court unable to reasonably discern "the agency's path." *Id.* (citing *Alaska Dep't of Envtl. Conserv. v. Envtl. Protection Agency,* 540 U.S. 461, 497 (2004)). The Commissioner argued that the court could reasonably infer that the ALJ rejected the claimant's testimony

because it conflicted with the medical evidence summarized by the ALJ in support of his RFC finding. *Id.* The court, however, concluded that this approach would constitute impermissible speculation as to the grounds for the ALJ's conclusions. *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)).

We find the Ninth Circuit's reasoning persuasive. However, as explained below, remand is necessary in this case even if we apply the Commissioner's "implicit explanation" approach. We therefore need not decide whether an ALJ's failure to articulate reasons for her credibility finding may *ever* be excused under that approach.

The ALJ's discussion of the evidence does not permit us to reasonably infer a sufficient explanation for her credibility finding. The medical evidence relevant to Appellant's asserted manipulative limitations included an opinion statement from consultative examiner Dr. Goewey and treatment records from Dr. Tucker, a treating physician who diagnosed Appellant with bilateral carpal tunnel syndrome and associated pain. However, the ALJ's decision does not mention Dr. Goewey's report or even the fact that he had performed a consultative examination. Further, though the ALJ cites the exhibit containing Dr. Tucker's treatment records and states that they were given great weight, the ALJ does not discuss their findings regarding Appellant's hands. The ALJ had a duty to "scrutinize" the consistency between Appellant's statements and the medical evidence. *Rogers*, 486 F.3d at 247; *see also* Soc. Sec. Rul. 96–7p, 1996 WL 374186, at *5. The ALJ's discussion of the medical evidence leaves us unable to discern whether and how she did so.

The ALJ's discussion of Appellant's daily activities further obfuscates her reasoning. The ALJ concluded that Appellant "can attend to her own personal needs" in part because she "testified that she cooks." However, Appellant had testified that she was unable to cook due to

her conditions. We cannot infer the ALJ's reasons for discrediting this testimony from a discussion that elides the testimony altogether.

In sum, neither the ALJ's boilerplate credibility finding nor her discussion of the evidence makes clear her reasons for discrediting Appellant's testimony concerning her manipulative limitations. We therefore cannot determine whether the omission of manipulative limitations from Appellant's RFC is supported by substantial evidence. Accordingly, we remand to the Commissioner for a new credibility finding and explanation thereof.

## II.      Evidence Submitted to the Appeals Council

After the ALJ rendered her decision, Appellant submitted additional evidence from Dr. Tucker to the Appeals Council, including additional treatment notes and an opinion regarding Appellant's limitations. A court cannot consider such a belated submission when reviewing an ALJ's decision. *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 544 (6th Cir. Aug. 5, 2014) (unpublished) (citing *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996)). The reviewing court can, however, order the Commissioner to consider the evidence pursuant to a "sentence six" remand under 42 U.S.C. § 405(g). *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "Sentence six of 42 U.S.C. § 405(g) allows a remand to develop additional evidence in the record, but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." *Id.* (citing 42 U.S.C. § 405(g)) (internal quotation marks omitted). A claimant seeking a sentence six remand bears the burden of showing these requirements met. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (citing *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)).

Appellant does not explicitly address the standards for a sentence six remand. In passing, however, she argues that the Court should remand for consideration of the evidence submitted to the Appeals Council because she "did not have the wherewithal to afford to purchase records or reports." Appellant does not elaborate regarding her financial status at the time, the fee charged by Dr. Tucker for such records, or her counsel's potential willingness to advance such a fee. Nor does she identify any change in circumstances that would explain why, even though Appellant successfully procured the additional evidence shortly after the ALJ's decision, she was unable to do so before. In sum, Appellant has not carried her burden of showing good cause for her failure to submit the additional evidence before the ALJ rendered her decision.[4]

In the alternative, Appellant argues that the ALJ violated her duty to develop the record by failing to procure, on her own initiative, Dr. Tucker's opinion concerning Appellant's limitations. Specifically, she argues that the ALJ should have asked Dr. Tucker to perform a consultative examination or simply re-contacted Dr. Tucker to ask him to submit an opinion. An ALJ has a duty to develop the record. *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983); *see also Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality op.). This duty is heightened where the claimant is not represented by counsel. *Lashley*, 708 F.2d at 1051. The determination of whether an ALJ has failed to fully develop the record must be made on a case-by-case basis. *Id.* at 1052.

Here, Appellant was represented by counsel before the ALJ, so the ALJ's duty was not heightened. The record before the ALJ included evidence from multiple sources concerning

---

[4] Additionally, Appellant has not identified any difference in content between the additional treatment notes and the notes that she presented to the ALJ. Thus, Appellant has failed to show that the additional treatment notes are "material." *See Hollon*, 447 F.3d at 484 (confirming that evidence is "material" if there is a reasonable probability that consideration of the evidence would have resulted in a different disposition) (citing *Foster*, 279 F.3d at 357).

Appellant's hands and wrists. This evidence included findings from Dr. Tucker, Dr. Bingham, and Dr. Valdivia. It also included a consultative examination report from Dr. Goewey, which stated Dr. Goewey's opinion that Appellant had no manipulative or other physical limitations. We believe this evidence was sufficient for the ALJ to reach a conclusion on Appellant's manipulative limitations without supplementing the record on her own initiative.

Appellant argues that the ALJ should have obtained a consultative examination report from Dr. Tucker, her treating physician, instead of Dr. Goewey, who had never previously examined her. It is true that regulations provide that a treating source "will be the preferred source" for a consultative examination if, in the Commissioner's judgment, the treating source "is qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment, and generally furnishes complete and timely reports." 20 C.F.R. § 404.1519h. The regulations do not, however, imply that failure to adhere to this preference renders the record inadequate. In fact, we have held on several occasions that an ALJ's duty to develop the record did not require the ALJ to order a consultative examination at all. *Norman v. Comm'r of Soc. Sec.*, 37 F. App'x 765, 765 (6th Cir. June 19, 2002) (unpublished); *Rise v. Apfel*, 234 F.3d 1269, at *2 (6th Cir. Oct. 13, 2000) (unpublished) (table dec.); *Hall v. Comm'r of Soc. Sec.*, 188 F.3d 507, at *3 (6th Cir. Aug. 24, 1999) (unpublished) (table dec.).

Appellant argues, alternatively, that the ALJ should have recontacted Dr. Tucker to obtain his opinion. If the ALJ cannot reach a conclusion regarding a claimant's disability due to the insufficiency or inconsistency of the evidence, regulations provide that the Commissioner "will try to resolve the inconsistency or insufficiency" by taking one or more specified actions, including ordering a consultative examination or recontacting the claimant's treating physician for additional evidence or clarification. 20 C.F.R. § 404.1520b(c). However, the regulations

suggest that the record may be sufficient to reach a conclusion regarding the claimant's disability even in the absence of any medical opinion. *See* 20 C.F.R. § 404.1527 ("Evidence that you submit or that we obtain *may* contain medical opinions.") (emphasis added). We recently held that an ALJ had sufficiently developed the record despite his failure to obtain the "findings and opinions" of the claimant's treating physician. *Forrest*, 591 F. App'x at 364. We reached this conclusion even though the claimant in *Forrest* was unrepresented before the ALJ, heightening the ALJ's duty to develop the record. *Id.* at 363. The ALJ here had a lesser duty, and Appellant has not demonstrated that she failed to satisfy it.

We note, however, that the Order of Appeals Council attached to the Council's denial of review states that the Council incorporated the additional evidence into the record. It would be appropriate for the ALJ to consider the evidence when reevaluating the medical source opinions and Appellant's credibility on remand.

**III.    Period Covered by Disability Finding**

The ALJ found Appellant not disabled between January 3, 2007 (her alleged onset date) and September 7, 2012 (the date of the ALJ's decision). Appellant argues that the disability finding should have extended back no further than April 8, 2010, the date of an earlier ALJ decision finding her not disabled. She also argues that the finding should have extended no further than January 23, 2012, the date the ALJ closed the record.

Because the ALJ's disability finding is vacated pending further proceedings on remand, we need not decide whether the finding covered an improper period. We note, however, that the Commissioner appears to concede that the ALJ erred by rendering a finding that overlapped with a prior ALJ finding, at least without discussing the prior finding. We also doubt that it was error for the ALJ to render her finding through the date of her decision. A claimant may seek to

supplement the record through the date of an ALJ's decision, since an ALJ may "reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence." 20 C.F.R. § 404.944. Here, the ALJ evinced some willingness to do so; at the hearing, she stated that she would temporarily keep the record open for the submission of additional records, confirmed with Appellant's counsel that there was no other evidence he intended to submit, and invited Appellant's counsel to submit a request for more time if needed. Though the eight-month gap between the hearing and the ALJ's decision is regrettable, courts have limited authority to police the timeliness of Social Security disability adjudications. *See Heckler v. Day*, 467 U.S. 104, 111–19 (1984). As noted, however, we need not resolve these issues.

### CONCLUSION

We **REVERSE** the judgment of the district court and **REMAND** with instructions to remand to the Commissioner for reevaluation of the medical source opinions and Appellant's credibility.