**NOT RECOMMENDED FOR PUBLICATION**
File Name: 10a0798n.06

**No. 09-6328**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Dec 30, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| EVELYN K. PERSCHKA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:  MARTIN and SILER, Circuit Judges; BELL[*], District Judge.

**SILER**, Circuit Judge.  Evelyn K. Perschka appeals the summary judgment by the district court denying her application for disability insurance benefits.  Perschka alleges that she suffers from seizures that completely preclude gainful employment.  The Commissioner of Social Security found Perschka not disabled within the meaning of the Social Security Act because she possessed skills transferable to sedentary employment and such jobs existed in sufficient numbers in the national economy.  For the following reasons, we **AFFIRM**.

## I.  BACKGROUND

### A.  Procedural Background

Perschka filed an application for disability insurance benefits in 1999, alleging blackout spells and seizures that caused her to cease working as a power plant operator.  She underwent a

---

[*] Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

consultative neurological examination, and the examining physician concluded that Perschka did not suffer from a neurocognitive impairment significant enough to preclude gainful sedentary type employment. In 2003, the ALJ found Perschka not disabled within the meaning of the Act. The ALJ determined that she retained the residual functional capacity ("RFC") to perform sedentary work, and that there are a significant number of such jobs in the national economy. The Appeals Council affirmed.

Perschka then appealed to the United States District Court for the Western District of Kentucky. The district court remanded the case, instructing the ALJ to obtain supplemental evidence from a vocational expert ("VE") to determine whether Perschka possessed any transferable skills.

In compliance with the court's order, a hearing before another ALJ was set in 2006. Perschka's representative, attorney Mark Pierce, contacted the hearing office on the day of the hearing to report that he was sick and would not attend. As a result, the hearing was not held, and the ALJ instead propounded interrogatories to a VE, Dr. Greenfell.

Dr. Grenfell found that Perschka possessed skills transferable to a dispatcher or timekeeper position, including the ability to maintain records and inventories, organize work schedules, and supervise, train, and evaluate subordinates. He also determined that these jobs are clerical, but exist in the same work setting and industry as Perschka worked in previously.

In May 2007, the ALJ forwarded the VE's responses to Perschka's attorney, asking him to comment or respond within 10 days. Pierce requested five extensions of time to prepare his response, on May 21, June 5, June 18, July 2, and July 17, respectively. The ALJ granted the first four requests, but denied the attorney's fifth request for additional time.

In July 2007, the ALJ determined that Perschka was not disabled within the meaning of the Act. She recounted the medical records from the various physicians who examined Perschka and the findings of the VE, and concluded that she was capable of successfully adjusting to a job that exists in significant numbers in the national economy.

When Perschka again sought relief in the district court, the court affirmed the decision of the Commissioner.

**B. Perschka's Relevant Medical History**

In May 1999, Dr. Walker began treating Perschka for migraine headaches. Perschka told Dr. Walker that she had experienced several blackouts, "by which she means she loses all vision." She stated that "she does not allow her headaches to keep her from work," and "she and her husband are active running a restaurant which they bought in December 1998." Between May 1999 and April 2000, she reported "small blackouts" to her primary care physician, Dr. Maestas. She stated that she did not fall during these blackouts, but lost vision and experienced a "pounding" in her head. In May 2000, Perschka complained of "briefly passing out with little warning" to Dr. Sommers at the Arizona Heart Institute. Dr. Sommers noted that, according to descriptions of these episodes, "there is no jerking sensation that would suggest any grand mal seizure."

Dr. Walker at the Scottsdale Headache and Pain Center evaluated Perschka in May and June of 1999, and again in July 2000. Dr. Walker prescribed Neurontin in 1999. In her July 2000 visit, Perschka told Dr. Walker "she has had a marked improvement in her headaches as well as her 'black-outs' since starting the Neurontin." She stated that "her blackouts are much less frequent. They are now about one per month." Dr. Walker ordered a brain MRI, which revealed "a small

abnormal area of enhancement involving the left side" of the brain stem. The radiologist who performed the MRI recommended "[c]lose follow-up." At a follow-up visit in December 2000, Perschka told Dr. Walker that "overall she feels better." She reported going "out" approximately four times per month without warning. Dr. Walker recommended that she see Dr. Drazkowski, a neurologist in the epilepsy division at the Barrow Neurology Institute.

In February 2001, Dr. Srivastava consultatively evaluated Perschka for the Arizona Disability Determination Service. He noted that Perschka had never been injured during these blackouts, and had "no history of biting of tongue or incontinence." The doctor reviewed the brain MRI, which "revealed . . . [a] lesion of doubtful clinical significance." Perschka stated that she responded to Neurontin, but "the effect has worn away." She also reported responding positively to Darvon and clonazepam. Dr. Srivastava noted that Perschka "takes active part in day-to-day activities like cooking, cleaning, vacuuming, laundry, utensils, etc." He concluded that she did not show "objective evidence of physical disability" and recommended a psychiatric evaluation for post-traumatic stress disorder and anxiety.

Dr. Drazkowski at the Barrow Neurological Group evaluated Perschka in May 2001. Perschka described her blackout episodes as "going down" and eventually passing out for 30 seconds to 30 minutes. Perschka's daughter and husband reported witnessing these episodes, which "are exacerbated by stress." Following an evaluation, Dr. Drazkowski described Perschka as a "well-developed, well-nourished . . . female in no apparent distress." He noted a "tremor of the head which is brought out by stress. This is intermittent and appears real." The doctor suggested that Perschka has "many features of OCD and maybe some mild depression. She has risk factors for nonepileptic

spells." He recommended an MRI of the head and neck and an EEG "to rule out seizure." The EEG returned "normal" without any "epileptiform discharges." The doctor reviewing the EEG noted that the "absence of epileptiform abnormality does not exclude the clinical diagnosis of a seizure disorder."

In September 2002, Dr. Zolan consultatively evaluated Perschka for the Arizona Disability Determination Service. He echoed Dr. Srivastava's determination that the brain abnormality revealed by the MRI was "of doubtful clinical significance." Perschka reported seven to eight episodes since January 2002. Dr Zolan found "sufficient evidence to suggest a seizure disorder," but concluded that Perschka did not have "any significant neurocognitive impairment" that would preclude gainful employment. Dr. Zolan determined that she should not operate a motor vehicle or heavy machinery, or perform work that requires repetitive motion, stooping, kneeling, balancing, or working at heights. He suggested sedentary type employment.

Dr. Drazkowski examined Perschka again in December 2002. Perschka had increased her medication dosage, resulting in an improvement and only "one spell per month or so." She "clearly state[d] that if she missed the medication the spells return fairly quickly within the next day or two." In September 2003, Dr. Drazkowski evaluated Perschka in an epilepsy monitoring unit. An off-medicine continuous EEG video monitoring session showed "frequent sharp waves and occasional spike with aftercoming slow wave." Perschka "had an electrographic seizure during her monitoring session emanating from the left central head region." Dr. Drazkowski confirmed a diagnosis of "partial seizure disorder," and noted that it was "unclear whether all of her events are epilepsy." He determined it "likely she has had partial seizures with occasional secondary generalization." At a

neurologic follow-up in October 2003, Dr. Drazkowski wrote that Perschka "has had no further seizures since we have seen her last. She has had no blackouts or disorientation . . . . [she] does have partial seizures and will likely have recurrence if she is not on anticonvulsant medication."

During a functional capacity evaluation by a physical therapist in January 2004, Perschka exhibited an ability for prolonged sitting activities, and scored in the sedentary category for work activities. However, Perschka was unable to complete the two-day testing because she experienced "two grand mal seizures," according to the physical therapist, at the beginning of the second day. The physical therapist did not recommend "any type of employment" until her seizures were under control.

Perschka's insured status expired in March 2004. In April 2004, Dr. Maestas completed an "Attending Healthcare Provider's Statement of Disability" supplied by Perschka's former employer. Dr. Maestas described her as "totally disabled," with "chronic pain and new seizure disorder." The doctor also concluded, however, that she is "capable of clerical/administrative (sedentary) activity."

### C. Perschka's Psychological Evaluations

In February 2000, Perschka attended a psychological consultation with Dr. General. Dr. General noted that Perschka drove 160 miles by herself to the appointment. Dr. General concluded that her "prognosis for returning to the work force is fair." He characterized her ability to perform work-related tasks as "good," with "fair" short-term memory. He recommended medication for her bipolar condition.

Perschka saw another psychologist, Dr. Rose, in December 2000. Dr. Rose described Perschka as "quite manic" with a "head tremor." Dr. Rose disagreed with Dr. General's bipolar

diagnosis, but concluded that Perschka experienced "hyperness." Dr. Rose determined that Perschka's "hypomania should not necessarily pose an obstacle to performing work related activities, although given her hypomania, she should consider less dangerous jobs than working at power plants."

## II. DISCUSSION

### A.

We determine whether substantial evidence supports the Commissioner's findings. 42 U.S.C. § 405(g). A claimant has the burden of proving her entitlement to benefits prior to the expiration of her insured status. 42 U.S.C. § 423(d)(5)(A). She must provide competent evidence to authenticate a medical or psychological condition that prevented her from engaging in gainful work activity. 20 C.F.R. § 404.1512(a) (2009); *Boyes v. Sec'y of Health and Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Even if the claimant cannot perform her prior work, she is not disabled if her RFC and vocational abilities allow her to perform work that exists in significant numbers in the national economy. *Odle v. Sec'y of Health and Human Servs.*, 788 F.2d 1158, 1161 (6th Cir. 1985). Her employability is not a factor in determining disability. 20 C.F.R. § 404.1566(c)(1); *Odle*, 788 F.3d at 1161.

Social Security Disability Evaluation Listing 11.02 provides the requirements for showing a "convulsive epilepsy" disability under the Act. 20 C.F.R. § 404, Subpart P, App. 1. The claimant must show a documented grand mal or psychomotor seizure pattern "occurring more frequently than once a month in spite of at least 3 months of prescribed treatment." *Id.* The claimant must present specific medical evidence to satisfy all of the criteria. 20 C.F.R. § 416.925.

Perschka argues that the ALJ's determination was not based on substantial evidence. She contends that she met the Listing 11.02 requirements for convulsive epilepsy, and that the ALJ erred in her RFC assessment. She further contests the ALJ's determination that she has transferable skills for a dispatcher or timekeeper position, as well as the finding that those jobs exist in significant numbers in the national economy.

Contrary to Perschka's arguments, substantial evidence supports the ALJ's decision. First, there is substantial medical evidence supporting the ALJ's conclusion that Perschka did not meet Listing 11.02. Two state medical experts concluded that she did not suffer from a significant neurocognitive impairment and could perform sedentary work. Other physicians noted that Perschka's description of her episodes lacked the symptoms of grand mal seizures. Multiple physicians commented that her episodes occurred less frequently with medication.

There is evidence that Perschka suffers from some level of seizure activity. Indeed, she experienced a seizure in the epilepsy monitoring unit in September 2003. However, this seizure led Dr. Drazkowski to a diagnosis of only "partial seizures with occasional secondary generalization." He also noted that it was "unclear whether all of her events are epilepsy." This is not consistent with convulsive epilepsy in Listing 11.02, which requires documentation of generalized or grand mal seizures occurring at least once per month. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

One physical therapist did report witnessing Perschka have "two grand mal seizures" while performing a functional capacity evaluation. The ALJ did not consider this assessment in her determination, because "this statement came from a physical therapist with no expertise or

qualifications to provide an opinion on vocational issues." This conclusion is consistent with Social Security regulations, which do not include physical therapists in the list of acceptable medical sources who can provide evidence to establish an impairment. *See* 20 C.F.R. § 404.1513(a)(1)-(5). Even if the ALJ had considered the physical therapist's characterization of the episode, this isolated incident would not establish that Perschka experienced convulsive grand mal seizures with the frequency required in Listing 11.02.

Similarly, substantial evidence supported the ALJ's RFC determination. The ALJ thoroughly reviewed the record before concluding that Perschka is able to perform sedentary work with restrictions. Based on objective evidence of Perschka's seizure disorder from medical records, the ALJ determined that she cannot lift or carry more than ten pounds, sit for longer than six hours, walk for more than two hours, operate a motor vehicle or heavy machinery, work at heights, or perform jobs that require repetitive motion. Based on the subjective evidence, the ALJ found that Perschka's seizure disorder did not significantly limit her daily activities. *See* 20 C.F.R. § 404.1529(c)(3). Specifically, she was able to clean, shop, sew, cook, socialize, bowl, and walk several miles a day. *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("ALJ may consider household and social activities in evaluating complaints of disabling pain."). Moreover, Perschka indicated that she responded positively to medication. *See Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). This evidence amply supports the ALJ's RFC determination.

Substantial evidence also supports the ALJ's finding that Perschka had transferable skills. The VE listed several of Perschka's skills that could be transferred to a position as service dispatcher

or timekeeper. The VE's conclusions are consistent with statements from multiple physicians. Any difficulties Perschka may have encountered in her job search do not affect her disability determination. *See* 20 C.F.R. § 404.1566.

Finally, neither the newly appended 2009 Widow's Benefits determination nor the 2007 neurologist's opinion require remand. The ALJ's 2009 determination concluded that Perschka "has been disabled from July 24, 2007 through the date of the decision." The neurologist's May 31, 2007 opinion states that Perschka has been treated for "the past two years and three months." This evidence is not material because it does not establish that Perschka was disabled before her disability insured status expired on March 31, 2004. *See* 42 U.S.C. § 423(a), (c); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**B.**

Perschka argues that her due process rights were violated because she never had the opportunity to respond to the VE's interrogatory answers. She acknowledges that her attorney should have responded, but argues that he failed to adequately represent her. She alleges that he exhibited bad faith. She further appears to contend that, as a result of her attorney's repeated requests for extensions of time to respond to the VE's interrogatories, the ALJ was biased in her unfavorable determination. She also suggests that the ALJ did not fully and fairly develop the record, particularly because Perschka was unrepresented by counsel at the hearing.

Perschka has not shown a due process violation. First, she had an opportunity to respond to the VE's conclusions. ALJ Thomas proffered the VE's interrogatory responses to Perschka's attorney. For the next three months, ALJ Thomas granted Perschka's attorney's four requests for

extensions of time to respond to the interrogatories, eventually denying the fifth request. The ALJ's proffer and granting of multiple extensions of time to respond provided Perschka a meaningful opportunity to present her case. *See Flatford*, 93 F.3d at 1306-07. Additionally, she fails to support her conclusory allegation that her attorney exhibited bad faith before ALJ Thomas. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e decline to formulate arguments on [appellant's] behalf").

Second, Perschka presents no evidence to substantiate her claim that the ALJ was biased, other than the ALJ's unfavorable ruling. An adverse ruling alone is not enough to support a finding of bias. *See First Nat'l Monetary Corp. v. Weinberger*, 819 F.2d 1334, 1337 (6th Cir. 1987).

Finally, Perschka has not shown that the ALJ failed to fully and fairly develop the record. The ALJ held a hearing, reviewed several hundred pages of medical records, and solicited VE testimony. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983) ("[The ALJ] must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts"). She informed Perschka's attorney that he could submit written comments concerning the VE's evidence, request a supplemental hearing to submit additional evidence, and request a subpoena for witnesses or records. The ALJ's decision carefully discusses the record evidence and does not merely rely on the findings of the prior ALJ.

**AFFIRMED.**