**Pharaoh PHILLIPS, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**Case No. 5:12CV1997.**

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 16, 2013.

Linda S. Pettit, Matthew J. Shupe, Paulette F. Balin, Law Office of Paulette F. Balin, Mentor, OH, for Plaintiff.

Lisa Johnson, Office of the U.S. Attorney, Northern District of Ohio, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION

SARA LIOI, District Judge.

Before the Court is the Report and Recommendation ("R & R") of Magistrate Judge James R. Knepp II (Doc. No. 24) with respect to plaintiff's request for judicial review of defendant's denial of his claim for supplemental security income benefits ("SSI") and for remand to the Administrative Law Judge ("ALJ") for further proceedings. Plaintiff filed an objection to the R & R (Doc. No. 25) and defendant filed a response to the objection (Doc. No. 26). Upon *de novo* review and for the reasons set forth below, the Court hereby overrules plaintiff's sole objection, accepts the R & R, denies plaintiff's motion to remand, and dismisses this case.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for SSI benefits on April 7, 2009, alleging a disability onset date of January 1, 2008, due to asthma, injured feet, chronic obstructive pulmonary disease (COPD), emphysema, and depression. (Transcript ["Tr."] 204, 224, 250.)[1] His application was denied initially and upon reconsideration. (Tr. 173, 179.) On plaintiff's request, a hearing was conducted before an ALJ, with plaintiff repre-

sented by counsel. (Tr. 101.) A vocational expert ("VE") testified at the hearing, as did plaintiff's sister. On March 24, 2011, the ALJ issued a decision affirming the denial of benefits finding plaintiff not disabled. (Tr. 81.) Plaintiff timely appealed. Subsequently, plaintiff developed colon cancer and submitted additional medical records to the Appeals Council. (Tr. 283.) After review of the additional evidence, the Appeals Council denied plaintiff's request for review, rendering the ALJ's decision final. (Tr. 58.)

Plaintiff timely filed the instant action under 42 U.S.C. § 405(g) and 1383(c)(3), seeking judicial review of the administrative determinations. Plaintiff, represented by counsel, filed a motion to remand (Doc. No. 19) and a brief on the merits (Doc. No. 20); defendant filed a response brief on the merits (Doc. No. 21); and plaintiff filed a reply (Doc. No. 23).

On July 19, 2013, Magistrate Judge Knepp issued his R & R. (Doc. No. 24.)

## II. STANDARD OF REVIEW

 This Court's review of the Magistrate Judge's R & R is governed by 28 U.S.C. § 636(b), which requires a *de novo* decision as to those portions of the R & R to which objection is made. Judicial review is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir.2005). Substantial evidence is more than a scintilla but less than a preponderance. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). It is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Jones v.*

---

**1.** All page references are to the PageID # in the relevant document.

*Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir.2003) (quoting *Stanley*). If there is substantial evidence to support the defendant's decision, it must be affirmed even if the reviewing court might have resolved any issues of fact differently and even if the record could also support a decision in plaintiff's favor. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n. 4 (6th Cir.1986).

## III. DISCUSSION

■ Plaintiff raises the following single objection to the R & R: "Plaintiff hereby specifically objects to the Magistrate Judge's finding that the ALJ properly weighed the treating physician opinion of Charles Dhyanchand, M.D." (Doc. No. 25 at 500.) In light of this objection, the Court will conduct a de novo review of the ALJ's treatment of Dr. Dhyanchand's opinion.

The ALJ found as follows:

On February 7, 2011, Dr. Charles Dhyanchand completed a form entitled "Medical Statement Regarding Peripheral Arterial Disease." He checked several boxes, which indicated that certain signs/symptoms were present. For example, he noted that intermittent claudication was present in both the left and right legs. In addition, he noted that reduced or absent pulse in extremity was present in both legs. Further he noted that foot numbness was present in both feet. Based upon these alleged signs/symptoms, Dr. Dhyanchand opined that Mr. Phillips is limited to working only 2 hours per day. He also opined that during the two hours, Mr. Phillips is limited to standing for only 30 min-

utes at a time and sitting for only 50 minutes at a time. He further opined that Mr. Phillips could not lift more than 10 pounds occasionally and only 5 pounds frequently. Lastly, he opined that Mr. Phillips would need to elevate his legs frequently during an 8–hour workday. (14F). The opinion of Dr. Dhyanchand is given little weight because it is conclusory and is not supported by the record. There are no records from Dr. Dhyanchand's office, for example, indicating that claudication or numbness are present (11F). In addition, it is noted that Dr. Dhyanchand is not a specialist in this area. Lastly, the record discloses a very short treatment relationship between Dr. Dhyanchand and Mr. Phillips for this particular impairment.

(Tr. at 91–92.) [2]

Plaintiff argues that, measured against the analytical standards in *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir.2013), the ALJ's decision "fell woefully short of what the regulations require." (Doc. No. 25 at 502.) He argues that the ALJ made no initial finding as to the controlling weight to be given to Dr. Dhyanchand, but rather "collapsed the 'weight analysis' into one step, concluding that Dr. Dhyanchand should receive 'little weight' in part because he was not a cardiologist and had a short treatment relationship with Plaintiff." (Doc. No. 25 at 502.) Plaintiff argues that the court in *Gayheart* held that the factors prescribed by 20 C.F.R. §§ 404.1527(c)(2)(i-ii), (3–6) (and the parallel regulation that is applicable in the instant case— §§ 416.927(c)(2)(i-ii), (3–6)),[3] including specialization and

---

**2.** Exhibit 14F, the form completed by Dr. Dhyanchand, is in the Transcript beginning at page 387. The doctor's treatment records relating to plaintiff, Exhibit 11 F, begin at page 355.

**3.** Section 416.927 of Title 20 of the Code of Federal Regulations provides, in relevant part:

(c) How we weigh medical opinions. Regardless of its source, we will evaluate ev-

ery medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.* When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

length of treatment, "are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart,* 710 F.3d at 376. Plaintiff further argues that the failure of the ALJ to conduct a proper controlling weight analysis requires remand. (Doc. No. 25 at 502) (citing *Gayheart,* 710 F.3d at 377 ("[t]he failure to provide 'good reasons' for not giving [the treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation")).

■ In *Gayheart,* the court noted that the relevant regulations " 'provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker.' " *Id.* at 375 (quoting Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996)). The court explained the analytical process as follows:

> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.,* as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole

> 20 C.F.R. § 416.927 (emphasis in (c)(2) add-

and is supported by relevant evidence, *id.* § 404.1527(c)(2–6).

> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004).

*Id.* at 376. However, failure to comply with the "good reason" requirement may be deemed harmless error if " '(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; ... or (3) where the Commissioner has met the goal of [the regulation] ... even though [he] has not complied with the terms of the regulation.' " *Cole v. Astrue,* 661 F.3d 931, 940 (6th Cir.2011) (quoting *Friend v. Comm'r of Soc. Sec.,* 375 Fed.Appx. 543, 551 (6th Cir.2010) (quoting *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir.2004))). As noted by the court in *Friend,* the goal of the "good reason" requirement is "the provision of the procedural safeguard of reasons[.]" *Friend,* 375 Fed.Appx. at 551.

Here, the ALJ supplied reasons for giving Dr. Dhyanchand's opinion little weight: that it was "conclusory and ... *not supported by the record.*" (Tr. at 92, emphasis added.) When the latter is coupled with the ALJ's conclusion that "[t]here are no [office or treatment] records" (*id.*) to

ed).

support certain claimed physical conditions, this is the functional equivalent of a determination by the ALJ that the treating physician's opinion (expressed in mere check marks on a form) need not be given controlling weight under the regulation because it was *not* "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and *was* "inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 416.927(c)(2). In other words, the opinion of Dr. Dhyanchand was so "patently deficient" that it could not be credited.[4] *Cole*, 661 F.3d at 940; *see also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001) (even though "medical opinions and diagnoses of treating physicians are entitled to great weight[,]" "the ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation' ") (quoting *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984)). Further, although the ALJ's articulation of his reasons was very brief, it was clear and made specific reference to exhibits in the record by way of support.[5] Finally, although plaintiff argues that the A LJ failed to make a controlling weight

determination *before* he applied the factors of specialization of the source and length of the treatment relationship, this is not so, as revealed by a simple review of the ALJ's opinion: the declaration that Dr. Dhyanchand's opinion would be given little weight was made prior to the additional conclusions that he was not a specialist and had a short treatment relationship with plaintiff.

## IV. CONCLUSION

For the reasons discussed above, plaintiff's sole objection to the R & R is overruled. The R & R is accepted. Because the Commissioner's decision to deny SSI benefits was supported by substantial evidence, that decision is affirmed, plaintiff's motion to remand is denied, and this case is closed.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

JAMES R. KNEPP II, United States Magistrate Judge.

### INTRODUCTION

Plaintiff Pharaoh Phillips filed a Complaint (Doc. 1) against the Commissioner

---

**4.** Plaintiff also relies upon *Kirven v. Colvin*, No. 5:12 CV 1727, 2013 WL 3766590 (N.D.Ohio July 16, 2013), where another judge of this court, applying *Gayheart* and adopting the reasoning in a magistrate judge's R & R, concluded that the ALJ had improperly collapsed the weight analysis into one step. The court in *Kirven* held that "[t]he failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason[s] for not giving controlling weight constitutes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record." *Id.* at *6 (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)). The problem with plaintiff's comparison is that the opinion of the treating physician in *Kirven* was considerably more extensive than in the instant case. In *Kirven*, the treating physician had three documented, de-

tailed evaluations of the plaintiff upon which he based his disability determination. Nonetheless, the ALJ improperly failed to afford that treating physician's opinion "controlling weight," because, in the ALJ's view, it was inconsistent with treatment notes. Here, the issue is not inconsistency of treatment notes with a diagnosis; the issue is complete lack of treatment notes to support the diagnosis.

**5.** Upon independent review of Dr. Dhyanchand's treatment notes, this Court reaches the same conclusion as that of the ALJ, namely, that the doctor's notes reveal nothing that could have warranted his extreme diagnosis and conclusion regarding plaintiff's abilities. The fact that the ALJ cited but one example (lack of records "indicating that claudication or numbness are present (11F)" (Tr. at 92)) does not diminish the ALJ's conclusion.

of Social Security seeking judicial review of the Commissioner's decision to deny supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated August 3, 2012). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on April 7, 2009, alleging a disability onset date of January 1, 2008, due to asthma, injured feet, chronic obstructive pulmonary disease (COPD), emphysema, and depression. (Tr. 147–49, 167, 193). His claim was denied initially (Tr. 116–18) and on reconsideration (Tr. 121–24). Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 23). Plaintiff (represented by counsel), Plaintiff's sister, and a vocational expert (VE) testified at the hearing, after which the ALJ found Plaintiff not disabled. (*See* Tr. 24, 44). Subsequently, Plaintiff was diagnosed with colon cancer and submitted additional medical records to the Appeals Council. (Tr. 226). After review of the additional evidence, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. On August 3, 2012, Plaintiff filed the instant case. (Doc. 1).

### FACTUAL BACKGROUND

*ALJ Hearing Testimony and Disability–Reports*

Plaintiff was 53 years old on the date of the ALJ hearing and lived in a house with two friends. (Tr. 50, 76–77, 199). He has an eighth grade education and dropped out of the ninth grade to work at a gas station.

(Tr. 51). Plaintiff has not worked since 2004. (Tr. 51). He previously worked in a warehouse but testified he quit because he had trouble breathing due to the cold temperature of the warehouse. (Tr. 51–52, 54). However, in an undated disability report, Plaintiff said he stopped working because of "lack of work" and "the company never called [him] back." (Tr. 167). Plaintiff also worked in a cheese factory as a laborer but was fired after failing a urine test. (Tr. 53). He worked as a handyman but quit because he was not satisfied with the pay; and he quit a janitorial job because he did not get along with his manager. (Tr. 54–56). Plaintiff told a psychological consultant he earned money under the table in the past, but denied this when questioned by the ALJ. (Tr. 57–58).

Plaintiff said he could not work because of trouble breathing, standing, and walking. (Tr. 60). Nevertheless, Plaintiff testified he still smoked three-to-four cigarettes per day but took Wellbutrin which helped. (Tr. 58–59). Plaintiff also told the ALJ he had problems standing and walking due to peripheral arterial disease (PAD). (Tr. 62–63). He said his legs felt heavy and tight, which caused him to alternate between sitting for twenty minutes and standing for five minutes. (Tr. 62–63).

Plaintiff's sister, Ms. Gilak, testified at the ALJ hearing and said his inability to stand and complications from COPD prevented Plaintiff from working. (Tr. 68). She also indicated Plaintiff had cognitive learning problems, hearing issues, and a liver disorder related to alcoholism. (Tr. 67, 69). She had power of attorney over Plaintiff's affairs and stopped by to check on him three-to-four days a week. (Tr. 66–67, 76–78). On February 23, 2011, Ms. Gilak and Plaintiff's mother filed disability questionnaires on behalf of Plaintiff. (Tr. 222–25). They both stated Plaintiff had problems breathing, leg circulation issues

with associated pain, and a cognitive learning disability. (Tr. 222–25).

Concerning daily activity, Plaintiff reported he watched television, talked to friends, and played guitar, although his hands cramped up. (Tr. 200, 203). He prepared his own meals, did laundry, and went out alone, but he said he could not do yard work or shop for groceries. (Tr. 201–03). He said he could lift up to 20 pounds and walk 50–100 feet before stopping to rest. (Tr. 204).

*COPD*

On March 24, 2009, Plaintiff presented to Robinson Memorial Hospital (Robinson) with nasal congestion and a cough. (Tr. 231). He complained of shortness of breath, but no chest pain. (Tr. 231). Muscle strength was 5/5 throughout his upper and lower extremities. (Tr. 231). X-rays showed "questionable" COPD and a diagnosis of bronchitis. (Tr. 232). He was prescribed breathing medication and instructed to follow-up. (Tr. 232). A week later, Plaintiff went to Portage Community Health (Portage) for a follow-up and complained of shortness of breath. (Tr. 239). His lungs were diminished and he exhibited some rhonchi, but his respirations were easy and no wheezing was present. (Tr. 239). He was diagnosed with exacerbated COPD and tobacco use and prescribed medication for breathing and smoking cessation. (Tr. 239).

Plaintiff returned to Portage on May 12, 2010. (Tr. 295). Although he had not been using Advair as prescribed, Plaintiff said he was breathing better. (Tr. 295). He had no cough but complained of occasional chest pain that resolved on its own. (Tr. 295). Plaintiff exhibited occasional expiratory wheezes but his respirations were easy. (Tr. 295–96). He was instructed to stop smoking and prescribed breathing medication. (Tr. 296). On October 12, 2010, Plaintiff went to Portage and reported he felt daily chest pain but rest relieved it. (Tr. 298–99). Plaintiff's lungs had normal air movement and he was prescribed Aspirin for chest pain. (Tr. 298–99). At an exam on June 21, 2010, Plaintiff exhibited occasional expiratory wheezes but his respirations were easy, and he was given Spiriva samples. (Tr. 305–06).

On November 9, 2010, Plaintiff went to Robinson for pulmonary function testing which revealed a mild airway obstruction and mildly reduced ventilation. (Tr. 312). Another pulmonary function test on December 16, 2010, showed mild hyperinflation and moderately reduced maximal voluntary ventilation. (Tr. 321). However, test administrators noted Plaintiff's poor quality of effort made the test suspect. (Tr. 321).

*PAD*

Plaintiff went to Portage on June 15, 2010 because the surfaces of his hands and feet were peeling. (Tr. 307). He also complained of ankle pain, which he said woke him up every night; however, there was no swelling, weakness, injury, fracture, bruising, or deformity. (Tr. 307). He also had full range of motion in his upper and lower extremities. (Tr. 307). He was diagnosed with dermatitis and prescribed ointment. (Tr. 307). On September 29, 2010, he was diagnosed with peripheral artery disease. (Tr. 300–01). On December 10, 2010, Plaintiff was initially at Robinson for pulmonary function testing "but the respiratory therapist felt that he was intoxicated and could not do the test." (Tr. 319). Subsequently, he showed up at Robinson's emergency room complaining of bilateral leg pain. (Tr. 319–20). He denied chest pain or shortness of breath, said he smoked five cigarettes per day, admitted drinking three beers that morning, and said he had a problem with alcohol. (Tr. 319). On examination, Plaintiff's lungs were clear, he had full strength in

his lower extremities, a normal gait, and intact sensation. (Tr. 320). He was given Toradol and said he felt better. (Tr. 320). He tested negative for deep vein thrombosis. (Tr. 320, 328).

*Abdominal Pain*

On June 29, 2010, Plaintiff went to Robinson and complained of abdominal pain. (Tr. 310). He was diagnosed with probable fatty infiltration of the liver (Tr. 311), which was confirmed as "alcoholic fatty liver" by a July 6, 2010 liver-function test. (Tr. 302–03).

On January 6, 2011, Plaintiff presented to Robinson with lower abdomen pain, vomiting episodes, and lack of a bowel movement in two days. (Tr. 317). He had no chest pain or shortness of breath and his lungs were clear. (Tr. 317). His abdomen was tender, but lab results revealed normal liver functions and a CT scan showed constipation. (Tr. 318). He was diagnosed with abdominal pain, secondary to constipation. (Tr. 318).

*Opinion Evidence*

On June 9, 2009, Plaintiff saw Yolanda Duncan, M.D., for a consultive examination and reported shortness of breath, chest pain, and back pain. (Tr. 241–49). Plaintiff said he had shortness of breath due to emphysema and could only walk 50–100 feet before he needed to rest. (Tr. 245). He told Dr. Duncan he could not climb stairs and could stand for 20 minutes or sit for 30 minutes before developing back pain. (Tr. 245). He also said he burned his feet in 1989 which made it difficult to stand. (Tr. 245). He used no ambulatory aids and had a normal gait. (Tr. 246). Plaintiff exhibited slight expiratory wheezing but no crackles or rhonchi. (Tr. 246). Dr. Duncan noted Plaintiff had no muscle atrophy or muscle spasms and normal grip, manipulation, pinch, and fine coordination. (Tr. 241). He had full strength in his upper and lower extremities. (Tr. 241). Dr. Duncan found Plaintiff would not have difficulty working if he was permitted to alternate between sitting for up to 30 minutes and standing for up to 20 minutes. (Tr. 247). She found he was unable to climb stairs, his hearing and speech were normal, and he would not have difficulty traveling or following commands. (Tr. 247). Dr. Duncan interpreted a pulmonary function test which revealed only mild obstruction. (Tr. 251).

State agency physician Nick Albert, M.D. reviewed Plaintiff's records and provided a physical RFC assessment on July 2, 2009. (Tr. 256–63). He concluded Plaintiff could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour work day. (Tr. 256–63). He also found Plaintiff had unlimited pushing and pulling abilities, which included the operation of hand and foot controls. (Tr. 256–57). Plaintiff had no postural or manipulative limitations, but Dr. Albert found he should avoid moderate exposure to extreme cold and heat, humidity, and fumes. (Tr. 260).

On December 3, 2009, Plaintiff went to Frederick G. Leidal, Psy. D., for a psychological examination. (Tr. 264–70). Plaintiff said he "burnt out" his lungs in 1993 while working in a restaurant where he was exposed to a mixture of cleaning chemicals. (Tr. 265). He said he had no energy and could not walk due to loss of wind. (Tr. 265). Plaintiff acknowledged drug and alcohol problems since adolescence but said he stopped using drugs when he was 25. (Tr. 266). He acknowledged he was an alcoholic and said he went though detox and rehabilitation, but also said he did not want to stop drinking. (Tr. 266). He presented to the examination under the influence of alcohol and said he planned to drink after. (Tr. 266). He

reported working a number of jobs, including laying cinder block "under the table" and giving guitar lessons. (Tr. 266). Plaintiff said for the past seven years he had subsisted "entirely off of financial handouts [ ] from various friends and earned unreported income [ ] he did[ ][not] wish to discuss." (Tr. 267).

He was dressed casually but his clothes were soiled and he smelled of noticeably bad body odor and cigarettes. (Tr. 267). He was oriented to person, place, and time and his eye contact was normal. (Tr. 267). His gait was unencumbered and normal, his posture was normal, and there was no evidence of a visual or hearing impairment. (Tr. 267). Plaintiff brought a "hiking staff" to the appointment and said he needed it to help ambulate. (Tr. 267). However, Dr. Leidal noted Plaintiff "appeared entirely capable of walking without his staff and at one point left it in the examiner's lobby while he went out to smoke a cigarette and have a beer." (Tr. 267). The remainder of the exam related to psychological functioning was generally unremarkable. Dr. Leidal noted Plaintiff was independent in activities of daily living, without restrictions or limitations. (Tr. 268). He concluded Plaintiff's disability claim was physical in nature but he appeared to be in the borderline range of functioning. (Tr. 269). Dr. Leidal found Plaintiff's most serious symptoms included alcohol abuse, alcohol intoxication, and a moderately depressed, anxious, and irritable mood. (Tr. 269). From a psychological perspective, Dr. Leidal said Plaintiff's ability to obtain some type of productive employment without assistance was not impaired. (Tr. 270).

On December 17, 2009, state agency reviewing consultant Paul Tangemen, Ph.D., reviewed Plaintiff's records and found he had the ability to perform simple work related tasks, could relate on a superficial level, and could perform work in an environment that was not fast paced and did not involve strict production demands. (Tr. 290).

Plaintiff's treating physician Dr. Dhyanchand filled out a check the box "Medical Statement Regarding Peripheral Artery Disease" on February 7, 2011. (Tr. 330–31). He found Plaintiff exhibited intermittent claudication (leg discomfort), reduced or absent pulse, dry or scaly foot skin, and foot numbness in both extremities. (Tr. 330). Dr. Dhyanchand concluded Plaintiff could work only two hours a day and was limited to alternating between standing and sitting 30 minutes at a time. (Tr. 330). He found Plaintiff could lift ten pounds occasionally and five pounds frequently. (Tr. 330). Dr. Dhyanchand did not provide any statements or clinical observations to support his opinion. (Tr. 330). He also included his medical licensing information which indicated he was not a specialist in PAD, but rather a specialist in family medicine. (Tr. 331).

*ALJ's Decision*

The ALJ found Plaintiff had the severe impairments of COPD, PAD, borderline intellectual functioning, mood disorder, and alcohol dependence. (Tr. 29). However, despite these impairments, the ALJ found Plaintiff could perform medium work—except he must avoid even moderate exposure to pulmonary irritants, humidity, and extreme temperatures. (Tr. 32). In addition, he was limited to simple tasks that were not fast paced and did not have strict production demands, and superficial interaction with others. (Tr. 32).

The ALJ discussed treating physician Dr. Dhyanchand's opinion, gave it "little weight", and found it was conclusory and not supported by the record. (Tr. 35). The ALJ also indicated there were no records from Dr. Dhyanchand's office which showed claudication or numbness,

he had a very short treatment relationship with Plaintiff, and he was not a specialist. (Tr. 35).

*Medical Records Submitted to Appeals Council*

On January 25, 2012, ten months after the ALJ's decision, Plaintiff's attorney faxed a letter to the Appeals Council requesting Plaintiff's case be expedited due to a recent diagnosis of colon cancer. (Tr. 226). On February 8, 2012, Plaintiff's attorney submitted a letter and additional medical records showing Plaintiff had colon cancer which metastasized to his liver. (Tr. 226). In this letter, Plaintiff's attorney indicated that the "medical records reveal[ed][ ] [Plaintiff's] symptoms began about the same time the ALJ's decision in this case was issued". (Tr. 226–27).

Treatment notes showed Plaintiff began having abdominal pain in early 2011, but a "CT scan of the abdomen showed constipation [and] no evidence of obstruction or metastic disease." (Doc. 20–4, at 13). He did not return for a follow-up until July 2011, when he presented with worsening abdominal symptoms. (Doc. 20–4, at 13). Another CT scan showed constipation and colonic dilation. (Doc. 20–4, at 13). He did not follow-up for some time. On September 28, 2011, Plaintiff underwent loop colostomy, and in November 2011 a colonoscopy, which revealed a mass lesion. (Doc. 20–4, at 13). A December 5, 2011 CT scan showed five enhancing lesions within the liver consistent with metastic disease. (Doc. 20–4, at 13). Treatment notes specifically indicated these lesions were not seen on the previous CT scan. (Doc. 20–4, at 13).

*Appeals Council Decision*

On June 1, 2012, the Appeals Council denied Plaintiff's request for review. (Tr. 1–4). The Appeals Council considered the additional evidence, but found the medical records showed a diagnosis of cancer eight months after the ALJ's March 24, 2011 decision. (Tr. 1–2). Since the cancer occurred at a later time, the Appeals Council found the additional evidence did not affect the decision as to whether Plaintiff was disabled beginning on or before March 24, 2011. (Tr. 1–2). *See* 20 C.F.R. § 416.1470 (Appeals Council shall evaluate medical evidence only "where it relates to the period on or before the date of the [the ALJ hearing decision."). The Appeals Council instructed Plaintiff about his right to file a new application. Indeed, Plaintiff was awarded benefits pursuant to a subsequent application and new impairment. (Doc. 20, at 9–10).

## STANDARD OF REVIEW

 In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.,* 966 F.2d 1028, 1030 (6th Cir.1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be. conclusive." *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir.2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir.2003).

STANDARD FOR DISABILITY

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. § 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

█ Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.*

Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b-f) & 416.920(b-f); *see also Walters,* 127 F.3d at 529.

DISCUSSION

Plaintiff contends the Appeals Council should have considered his cancer diagnosis "new and material evidence" and awarded him benefits. In the alternative, Plaintiff argues the ALJ erred because his reasons for discounting treating physician Dr. Dhyanchand's opinion were flawed. As additional support, he argues the ALJ's reasoning was flawed because Dr. Dhyanchand's opinion was consistent with consultive examiner Dr. Duncan's opinion.

*Sentence Six Remand*

█ The statute is quite explicit as to the standards that must be met before a district court may order a sentence six remand for the taking of additional evidence. *Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 484 (6th Cir.2006). In particular, the claimant must show (i) the evidence at issue is both "new" and "material," and (ii) there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996). The party seeking a remand bears the burden of showing that these two requirements are met. *See Foster v. Halter,* 279 F.3d 348, 357 (6th Cir.2001).

█ The Sixth Circuit explains "evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Hollon,* 447 F.3d at 483–84 (*citing Foster,* 279 F.3d at 357). Such evidence, in turn, is deemed "material" if "there is a probability that the [Commissioner] would have reached a

different disposition of the disability claim if presented with new evidence." *Foster,* 279 F.3d at 357. Importantly, the additional evidence must also be time-relevant; that is, it must relate to the period on or before the date the ALJ rendered a decision. *See Wyatt v. Sec. of Health and Human Servs.,* 974 F.2d 680, 685 (6th Cir.1992) (Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.).

▇▇ Here, the evidence is not material because Plaintiff's cancer diagnosis did not relate to the period on or before the ALJ's March 24, 2011 decision. While Plaintiff complained of abdominal pain during the relevant time period, the additional records showed that colon cancer was a "subsequent deterioration or change in condition", and therefore immaterial. For example, Plaintiff complained of abdominal pain in early 2011, but a CT scan showed constipation and no evidence of obstruction or cancer. (Doc. 20–4, at 13). A CT scan in July 2011 showed only constipation and colonic dilation. (Doc. 20–4, at 13). In November 2011, eight months after the ALJ's decision, a colonoscopy revealed a mass lesion, subsequently diagnosed as colon cancer. (Doc. 20–4, at 13). On December 5, 2011, a new CT scan revealed five enhancing lesions within the liver consistent with metastatic disease which Dr. Martinez said "were not seen on the previous CT scan." (Doc. 20–4, at 13).

Plaintiff said he could not work because of trouble breathing, standing, and walking, and his medical records referenced conditions related to the same. While Plaintiff did complain of abdominal pain in early 2011, it was shown to be constipation. It was not until the end of 2011 that medical tests showed evidence of colon cancer. Therefore, the cancer was a deterioration or change in condition that occurred after the ALJ's decision, was not "material", and does not warrant a sentence six remand.

***Treating Physician***

▇▇ In the alternative, Plaintiff argues the ALJ erred because he improperly evaluated Drs. Dhyanchand and Duncan's opinions. Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 242 (6th Cir.2007); *see also* SSR 96–2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers,* 486 F.3d at 242.

▇▇ A treating physician's opinion is given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004)). When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.1527(c)(2). In determining how much weight to afford a particular opinion, an ALJ must consider: (1) examining relationship; (2) treatment relationship—length, frequency, nature and extent; (3) supportability—the extent to which a physician supports his findings with medical signs and laboratory findings; (4) consistency of the opinion with the record as a whole; and (5) specialization.

*Id.; Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir.2010).

 Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* An ALJ's reasoning may be brief, *Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 651 (6th Cir.2009), but failure to provide any reasoning requires remand. *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 409–10 (6th Cir.2009).

 Good reasons are required even when the conclusion of the ALJ may be justified based on the record as a whole. The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in cases where a claimant knows her physician has deemed her disabled and might be bewildered when told by an ALJ she is not, unless some reason for the agency's decision is supplied. *Wilson,* 378 F.3d at 544 (quotations omitted). "The requirement also ensures the ALJ applied the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.*

### Dr. Dhyanchand

First, Plaintiff argues the ALJ erred because his reasons for discounting Dr. Dhyanchand's opinion were insufficient and/or flawed. Not so. The ALJ discounted Dr. Dhyanchand's opinion for three reasons, and these reasons touched upon several factors an ALJ is required to consider under the regulations. 20 C.F.R. § 404.1527(c)(2); *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir.2010).

First, the ALJ found the extreme limitations expressed by Dr. Dhyanchand were "conclusory" and "not supported by the record." (Tr. 35). Indeed, on the form Dr. Dhyanchand submitted, he merely checked a few boxes indicating certain symptoms, but included no explanation and provided no clinical evidence or treatment records to support his findings. *See Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001) (Treating physicians are entitled to great weight; however, the ALJ "is not bound by conclusory statements of doctors, particularly when they are unsupported by detailed objective criteria and documentation."). Further, the ALJ specifically pointed to a lack of treatment notes indicating claudication or numbness. (Tr. 35). In addition, the ALJ pointed to treatment notes showing medical providers did not think Plaintiff's complaints of leg pain were "severe enough to warrant immediate attention, because [Dr. Dhyanchand] stated it would be addressed upon a future visit." (Tr. 33, *referring to* 303). Accordingly, as the ALJ stated, there was no support in Dr. Dhyanchand's treatment notes for the extreme limitations provided in his assessment.

Plaintiff cites *Brewer v. Astrue,* 2011 WL 2461341 (N.D.Ohio 2011) and protests it was beyond the ALJ's expertise to conclude Dr. Dhyanchand's severe limitations were inconsistent with his treatment notes. In *Brewer,* the court found it was beyond the ALJ's expertise to conclude a claimant's improved symptoms were inconsistent with functional limitations; namely, because the ALJ was essentially interpreting medical data. *Brewer,* 2011 WL 2461341, at *6. However, here, Plaintiff's use of *Brewer* is flawed because the ALJ did not conclude Dr. Dhyanchand's treatment records were inconsistent with his functional limitations; rather, the ALJ simply found there were no treatment records to support the assessment at all. Accordingly, *Brewer* is distinguishable, and not applicable to the instant case.

The ALJ also discounted Dr. Dhyanchand's opinion because he was not a PAD or arterial disease specialist and his treatment relationship with Plaintiff was "very short" for this particular impairment. Indeed, the record showed Dr. Dhyanchand was not a specialist in PAD (Tr. 331) and mainly treated Plaintiff for shortness of breath, COPD, flu symptoms, and alcohol abuse (Tr. 298–307). The ALJ properly discounted Dr. Dhyanchand's opinion and provided several "good" reasons for doing so—examining relationship, treatment relationship, supportability, and specialization. *See* 20 C.F.R. § 416.927.

### Dr. Duncan

■ Plaintiff also argues the ALJ erred because consultive examiner Dr. Duncan's opinion was consistent with Dr. Dhyanchand's opinion, and this consistency supports that Plaintiff was not capable of standing or sitting for long periods of time. However, again, the ALJ properly assigned this opinion little weight, and while he was not required to do so for a consulting physician, gave good reasons for the weight he assigned. *Slusher v. Astrue,* 2009 WL 2511936, *3 (E.D.Ky.2009); (*citing Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir.2007)). (The Social Security Act's requirement that ALJ's give "good reasons" for the weight given to medical opinions applies only to treating sources).

Here, the ALJ discounted Dr. Duncan's opinion because she "relied heavily on [Plaintiff's] subjective complaints and limitations", which the ALJ found not credible. (Tr. 34). Substantial evidence supports the ALJ's finding. Plaintiff told Dr. Duncan he experienced shortness of breath and chest pain after walking 50–100 feet; back pain that started after sitting for 30 minutes or standing for 20; and difficulty standing because of burnt feet. (Tr. 245–47). However, on examination, Plaintiff exhibited slight wheezing, no rhonchi, and no crackles. (Tr. 245–47). Plaintiff had a normal gait, used no ambulatory aids, and had a full range of motion in all four extremities. (Tr. 241–47). Muscle testing showed normal shoulders, wrists, elbows, fingers, hips, knees, feet, and toes, and he had no muscle spasms or atrophy. (Tr. 241–44). Therefore, the ALJ reasonably concluded Dr. Duncan relied on Plaintiff's subjective statements of limitations, despite clinical medical tests to the contrary.

The ALJ also discounted Dr. Duncan's opinion because it was not consistent with the record. Indeed, Plaintiff's daily activities belie his stated limitations—he prepared meals, played guitar, did laundry, and walked. Further, medical records showed Plaintiff was not as limited as he claimed. For instance, on March 24, 2009, Plaintiff had shortness of breath, but no chest pain and full strength in his arms and legs. (Tr. 231). At that time, he was diagnosed with bronchitis. (Tr. 232). Numerous visits to Portage indicated Plaintiff exhibited occasional expiratory wheezes, but his respirations were easy (Tr. 239, 295–96, 305–06), and pulmonary function testing revealed only mild obstruction (Tr. 312, 321). On December 10, 2010, he presented to Robinson for leg pain and denied shortness of breath or chest pain, had full strength in his lower extremities, a normal gait, and intact sensation. (Tr. 319–20). He was also negative for deep vein thrombosis. (Tr. 320, 328). On January 6, 2011, Plaintiff presented to Robinson again, denied chest pain and shortness of breath, and his lungs were clear. (Tr. 317).

Accordingly, the ALJ properly evaluated Dr. Duncan and Dhyanchand's opinions according to regulations and substantial evidence supports his decision.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law,

the Court finds the Commissioner's decision denying SSI benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

July 19, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters,* 638 F.2d 947 (6th Cir.1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).